**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

GLOBAL PLASMA SOLUTIONS, INC.,

       *Plaintiff*,

v.

ELSEVIER INC. and ELSEVIER LTD.,

       *Defendants*.

Civil Action No. 3:22-cv-00034

**GLOBAL PLASMA SOLUTIONS, INC.'S OPPOSITION TO ELSEVIER INC. AND
ELSEVIER LTD.'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

       Plaintiff Global Plasma Solutions, Inc. ("GPS"), respectfully submits its response in opposition to Defendants Elsevier Inc. and Elsevier LTD's (collectively "Defendants" or "Elsevier") Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted [Dkt. No. 11] ("Motion").

## I.    <u>INTRODUCTION</u>[1]

       As alleged in the Complaint, Defendants published and disseminated an article (the "Article") which asserted the baseless claim that GPS's products emit harmful byproducts and lacked efficacy for particle removal. The Article specifically and prominently named GPS and its propriety Needle Point Bipolar Ionization ("NPBI") technology. Defendants' publication of this false Article has resulted in substantial and irreparable harm to GPS and has caused numerous businesses and institutions across the country to forego implementing GPS's effective technology. Defendants' primary defense is not that the Article is accurate (which as alleged in detail in the Complaint, it is not), but instead that academic freedom and peer review somehow immunize

---

[1] GPS hereby incorporates the Complaint [Dkt. No. 1] by reference and for all purposes herein.

Defendants and permit them to circulate damaging falsehoods about a private company. This is not the law, and academic journals are most certainly not held to a lower standard for truth than media outlets or private parties. Defendants have filed the instant Motion to Dismiss based on a selective reading of the Complaint, and a profound misunderstanding of the law. Defendants' Motion should be denied.

## II.    <u>LEGAL STANDARD</u>

In considering a 12(b)(6) motion, a court must "accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff." *Id.* "A district court can properly grant a Rule 12(b)(6) dismissal only if the complaint fails to 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)); see *Spainhour v. Lowe's Cos. Inc.*, No. 5:16-cv-00138, 2017 WL 1362859, at *3 (W.D.N.C. Apr. 12, 2017). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. And, as the Fourth Circuit has warned, "courts must be careful not to import the summary-judgment standard into the motion-to-dismiss stage." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015).

## III.    <u>ARGUMENT AND AUTHORITY</u>

GPS has sufficiently pled factual allegations to support its claims for defamation and violations of the UDTPA. Defendants' Motion should be denied for at least the following reasons:

First, GPS has properly asserted claims against both Elsevier Ltd. and Elsevier, Inc. because the Defendants hold themselves out to the world as the same company – Elsevier, which published the Article.[2]

Second, because Defendants acknowledge that they in fact published the Article, Defendants are directly liable for any defamatory statements therein. Defendants' extensive arguments regarding vicarious liability are therefore irrelevant, and do not provide a basis to dismiss the Complaint.

Third, in an attempt to avoid defamation liability, Defendants rely upon defenses that are not legally recognized: (1) the article cannot be defamatory because it sets out its methodology; (2) even "sham" peer review prevents liability for defamation; and (3) "scholarly publishing." None of these "defenses" preclude liability as a matter of law.

Fourth, Defendants claim that GPS is a public figure, and therefore must plead "actual malice" by Defendants, and has failed to do so. However, the four corners of the pleading do not establish that GPS is a public figure and Defendants' submission of 80 pages of extrinsic evidence to establish that GPS is a public figure is entirely improper for a motion to dismiss. Furthermore, GPS has plead facts which establish actual malice at the pleading stage.

Finally, Defendants' argument pertaining to the UDTPA is equally flawed, and fails to acknowledge that, as a matter of law, a defamation claim satisfies the UDTPA standard.

Defendants' Motion is procedurally and substantively deficient, and therefore, the Motion should be denied.

---

[2] GPS hereby incorporates by reference the arguments and legal authority set forth in its Response in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. [Dkt. No. 16]

3

## A.     GPS HAS STATED A DEFAMATION CLAIM AGAINST DEFENDANTS

A plaintiff states a viable defamation under North Carolina law by alleging: (1) the defendant made false, defamatory statements; (2) the false statements concerned the plaintiff; (3) the false statements were published to a third person; and (4) the false statements caused injury to the plaintiff's reputation. *Tyson v. L'eggs Products, Inc.,* 84 N.C. App. 1, 10–11, 351 S.E.2d 834, 840 (1987). Each of these elements are alleged in the Complaint, and Defendants do not dispute that elements (2), (3), and (4) were adequately pled. *See* Compl. ¶¶ 86-94. Moreover, a written publication that, "when considered alone without explanatory circumstances," "tends to impeach a person in that person's trade or profession" is considered libel *per se* for which "malice and damages are deemed presumed by proof of publication, with no further evidence required as to any resulting injury." *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 897 (N.C. Ct. App. 2002).

As a preliminary matter, Defendants have failed to articulate the correct framework that this Court should employ in analyzing GPS's claims. Instead, the Defendants cite to fragments of various cases from a variety of circuits and conflate First Amendment jurisprudence with common law defamation. However, the controlling authority makes clear that when the defamatory statement in question concerns a private individual and a private controversy, all that a plaintiff must plead is factual allegations that establish a common law defamation claim, outlined above. *See Mutafis v. Erie Ins. Exch.*, 775 F.2d 593, 595 (4th Cir. 1985) ("[T]he principles of *New York Times* and *Gertz* had no application where the speech concerned no public issue but was speech solely in the individual interest of the speaker and was on a matter of purely private concern."); *Araya v. Deep Dive Media*, LLC, 966 F. Supp. 2d 582, 592–93 (W.D.N.C. 2013); *Phifer v. City of Rocky Mount*, No. 5:08-CV-00292-FL, 2010 WL 3834565, at *10 (E.D.N.C. Aug. 12, 2010) ("[I]n cases where the plaintiff is a private figure, and the speech at issue is of private concern, a plaintiff need not surmount such a high barrier to recover damages.").

4

Without explanation, Defendants contend that GPS must establish defamation under a heightened "fraud" standard. Fraud is not the correct standard under any circumstances. GPS is not even tasked with establishing the lesser negligence standard unless the "speech regard[s] a matter of public concern, where the plaintiff is a private individual." *Neill Grading & Const. Co. v. Lingafelt*, 168 N.C. App. 36, 47, 606 S.E.2d 734, 741 (2005). Moreover, only where a plaintiff is both a "public figure" **and** the speech pertains to a matter of "public concern" is a plaintiff required to show that a defendant published defamatory statements with "actual malice." *Lewis v. Rapp*, 220 N.C. App. 299, 305, 725 S.E.2d 597, 602 (2012); *Mathis v. Daly*, 205 N.C. App. 200, 203, 695 S.E.2d 807, 810 (2010). As illustrated in the Complaint, GPS is a private figure and the Article regards a private concern, thus, North Carolina's "common law interpretation of libel [should] be applied to the case." *Araya*, 966 F. Supp. 2d at 592. However, if this Court finds that GPS is a public figure (it is not) and that the Article is a matter of public concern (it is not), dismissal is still improper as the Complaint adequately pleads facts to show Defendants published the statements with actual malice.

### 1.    GPS States a Claim Against Both Elsevier Ltd. and Elsevier, Inc.

Defendants first argue that Elsevier Inc., must be dismissed because the footer of the Article claims only that it was "[p]ublished by Elsevier Ltd.," not Elsevier Inc. Motion p.5 (quoting Dkt. No. 1-1 p.2). As the Complaint alleges and Defendants acknowledge, Elsevier Ltd. is a United Kingdom corporation with its principal place of business in London, UK.  Compl. ¶ 18; *see* Motion p. 4. Elsevier Inc. is the company's domestic affiliate, operating in the United States, with its principal place of business in Delaware.  Compl. ¶ 17; *see* Motion p. 4. Although Defendants claim that the Complaint does not allege that the domestic entity, Elsevier Inc., was involved in the publishing of the defamatory Article, it does so expressly. *See* Compl. ¶ 87 (alleging that "Defendants" (plural) "have intentionally published false statements to the public at large through

5

the Article); *see also id.* p. 1 (referring to Elsevier Inc. and Elsevier Ltd. "collectively" by their shared corporate name "Elsevier").

That allegation is plainly plausible. "It is well settled that all who take part in the publication of a libel or who procure or command libelous matter to be published may be sued by the person defamed either jointly or severally." *Taylor v. Kinston Free Press Co.,* 237 N.C. 551, 552, 75 S.E.2d 528, 529 (1953). Whatever the fine print, the Article is published and branded under the two defendants' "shar[ed] … corporate name." Motion p. 5; *see* Dkt. No. 1-1 (top left corner). The Complaint alleges, and Defendants do not contest, that the co-branded Article was published domestically. *See* Compl. ¶ 21 (alleging that the Article was "mailed to North Carolina" and made accessible to "North Carolina residents and educational institutions" that had purchased subscriptions). And it alleges that the Defendants, collectively, maintain a registered agent in Raleigh, North Carolina; target North Carolina residents; and have contracts with Duke University and Western Carolina University, under which those North Carolina schools for a subscription to "Elsevier's ScienceDirect" service, which hosts an electronic version of the Article. *Id.* It is far more than plausible that the domestic Elsevier entity "t[ook] part in the publication" of an Article under its corporate name, targeting North Carolina residents, concerning a scientific study conducted in North Carolina on the technology of a North Carolina company, and distributed through North Carolina channels. Indeed, it is utterly implausible that Elsevier Inc. was not involved in publishing the Article where it (and not Elsevier Ltd.) was registered to do business.

In any event, Defendants' allegations as to which corporate entity did what is not a basis to dismiss the Complaint against Elsevier Inc. at the pleading stage. *See Jien v. Perdue Farms, Inc.*, No. 1:19-CV-2521-SAG, 2021 WL 927456, at *3 (D. Md. Mar. 10, 2021) (declining to dismiss complaint where similar allegations were made against multiple defendants and holding

6

that factual disputes as to which corporate entity was responsible should be raised at a later stage of litigation).

### 2. **The Complaint Alleges That Defendants Are Directly Liable for Defamation**

#### a. **Defendants Published Falsehoods About a Private Company**

Defendants argue at length that they cannot be held responsible for the content of the Article, and blame the Article's authors, editors or peer reviewers. Motion pp. 5-10. As discussed above, this argument is a non sequitur because GPS is a private company and the article did not address a matter of public concern, meaning that GPS need only allege that Defendants published the false statements. *See* pp. 4-5, *supra.* Defendants are directly liable for the publications they publish. *See Zeran v. America Online, Inc.*, 129 F.3d 327, 332 (4th Cir. 1997) ("[E]very one who takes part in the publication … is charged with publication."); *Taylor,* 237 N.C. at 552, 75 S.E.2d at 529; *Greer v. Skyway Broad. Co.,* 256 N.C. 382, 391, 124 S.E.2d 98, 104 (1962); *Desmond v. News & Observer Pub. Co*., 241 N.C. App. 10, 30, 772 S.E.2d 128, 143 (2015). The Complaint clearly alleges that Elsevier published the defamatory Article about GPS, a small private company, which falsely claimed that GPS' products release dangerous byproducts, a topic on which there was no previous debate or evidence. Compl. ¶¶ 46-47. This is libel per se, for which a publisher is directly liable. *See Boyce & Isley, PLLC*, 568 S.E.2d at 897.

#### b. **GPS' Complaint Alleges Negligence by Defendants**

Furthermore, even if negligence is required, the Complaint adequately alleges negligence on the part of the Defendants without resort to principles of vicarious liability.

As an initial matter, any determination as to whether the Article discusses a matter of public concern is a factual inquiry that cannot be decided at the pleading stage. "Whether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record." *Dun & Bradstreet, Inc. v. Greenmoss*

7

*Builders, Inc.*, 472 U.S. 749, 761 (1985). The Article discusses a GPS product that is not sold to the general public, and addresses byproduct formation, a topic about which there was no prior debate. Compl. ¶ 46. At the motion to dismiss stage, viewed in the light most favorable to GPS, the Article does not address a matter of public concern, and the Court need not consider whether GPS alleged intentional conduct by Defendants. *Leask v. Robertson*, No. 2:21-CV-2367-DCN, 2022 WL 673760, at *8 (D.S.C. Mar. 7, 2022) (denying motion to dismiss where it was not clear from complaint if issue was of public concern).

However, to the extent the Article is found to be a matter of public concern (it is not) the standard of fault is negligence, not fraud as argued by Defendants. *Compare* Motion p. 12 (arguing that fraud pleading standard applies) *with Neill Grading & Const. Co. v. Lingafelt*, 606 S.E.2d 734, 741 (2005) (holding that negligence is applicable standard under North Carolina law for matters of public concern); *Mathis v. Daly*, 695 S.E.2d 807, 812 (2010). In fact, the Fourth Circuit has declined to adopt a heightened pleading standard for defamation claims. *See Wuchenich v. Shenandoah Mem'l Hosp.*, 215 F.3d 1324 (4th Cir. 2000); *see also Araya v. Deep Dive Media, LLC*, 966 F. Supp. 2d 582, 587 (W.D.N.C. 2013). Defendants' attempt to burden GPS with the heightened pleading standard for fraud is improper.

Consistent with the applicable negligence standard (should this Court find the Article is a matter of public concern), GPS adequately pleads that Defendants' actions were negligent in that Elsevier's actions "caused or contributed to the wrongful conduct." *Global Textile All., Inc. v. TDI Worldwide*, LLC, 2018 NCBC LEXIS 159, at *13-14. Specifically, the Complaint alleges:

- Elsevier's purported peer-review process was a sham as it failed to catch obvious flaws— in equipment, procedure, and reporting.  Compl. ¶ 10.

- Multiple issues should have been caught in Elsevier's peer-review process before it released the Article to the public.  *Id.* at ¶ 8.

- The authors' suppression of data likewise should have been readily apparent to Elsevier, since the supplemental data for the Article contained the results of two different tests. *Id.*

- Elsevier has caused the broad dissemination of this unprotected speech and cannot use its sham peer- review process as a shield. *Id.* at ¶ 14.

- Elsevier's peer review of the study was flawed, as the process either entirely missed or ignored the errors outlined above. *Id.* at ¶ 59.

- Elsevier published the Article in the scientific journal Building and Environment without apparent regard for the blatant biases of its authors and with its violations of scientific integrity and distortions of data. *Id.* at ¶ 60.

The Complaint therefore establishes that Defendants were directly liable for their negligent conduct when Elsevier failed to "catch obvious flaws" in the Article. Compl. ¶¶ 8,10 59-65. In an attempt to dodge liability, Defendants argue that Elsevier did not control the Peer Review process. But such argument is improper at the motion to dismiss stage. *Eli Rsch., Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004) ("[A] motion for summary judgment after discovery is the preferred method for disposing of undisputed or unmeritorious claims"). Furthermore, a failure to exercise any quality control or fact-checking with respect to the Article is itself negligent and does not bolster Defendants' case. To the extent GPS's product is deemed a matter of public concern, GPS has sufficiently pled that Elsevier negligently published the defamatory Article.

### c. Defendants' Vicarious Liability Argument is Misplaced

Defendants submit nearly six pages of argument that GPS failed to establish vicarious liability, and on that basis, improperly contend that GPS cannot prevail on its defamation claim. Motion pp. 5-10. However, GPS does not need to make a case for vicarious liability as a publisher such as Elsevier is directly liable. Simply stated, Defendants' vicarious liability argument is based upon a misreading of the Complaint and applicable authority. Not only does the Complaint assert

9

claims <u>directly</u> against Defendants, but North Carolina law, which is applicable here,[3] imputes direct liability to a corporation based on "the corporation's acts or policies," such as Defendants' peer review policies. *See, e.g.*, *Everhart v. O'Charley's, Inc.*, 200 N.C. App. 142, 153, 683 S.E.2d 728, 737 (2009). Indeed, "[p]ublishers can be held liable for defamatory statements contained in their works even absent proof that they had specific knowledge of the statement's inclusion." *Zeran*, 129 F.3d at 331; *see also Morgan v. Moug*, No. 3:07CV374-C, 2008 WL 1733623 at *6 (W.D.N.C. Apr. 10, 2008) (a newspaper that re-publishes a defamatory article first published in another newspaper can be directly liable); *Lee v. Dong-A Ilbo*, 849 F.2d 876, 877 (4th Cir.1988) (same).

The cases relied upon by Defendants do not hold otherwise. First, Defendants rely upon *Cantrell v. Forest City Pub. Co.*, 419 U.S. 245 (1974) which did not involve defamation or a motion to dismiss, but rather an invasion of privacy claim decided after a full jury trial and application of a common-law malice requirement. *Id.* at 246-47. *D.A.R.E. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270 (C.D. Cal. 2000) (aff'd 270 F.3d 793 (9th Cir. 2001) is also inapposite. There, at summary judgment, the parties stipulated that the subject of the defamatory piece was a public figure, and that the plaintiff therefore had to prove actual malice by the publisher. *Rolling Stone*, 101 F. Supp. 2d at 1277-78. The question at hand was therefore whether, under *respondeat superior* principles, the author's knowledge of falsity could be imputed to Rolling Stone to prove actual malice. As discussed below, actual malice is not the standard here, and even if it were, Elsevier's knowledge of falsity is a fact-intensive question that cannot be decided in Elsevier's favor based on the four corners of the complaint.

---

[3] "A federal court sitting in diversity applies the law of the state in which it sits." *Edwards v. Cardinal Transp., Inc.*, 821 Fed. Appx. 167, 170 n. 3 (4th Cir. 2020) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).

10

### 3. Defendants' Asserted Defenses to Defamation Are Legally Untenable

North Carolina recognizes three principal defenses to a defamation claim: (1) truth; (2) opinion; and (3) qualified privilege. *Taube v. Hooper*, 840 S.E.2d 313, 319 (2020) (recognizing truth as absolute defense to defamation); *Jones v. Lowe's Companies, Inc.*, 402 F. Supp. 3d 266, 285 (W.D.N.C. 2019) (4th Cir. 2021) ("expressions of opinion not asserting probable facts are protected speech" and are not actionable). Defendants have not adequately asserted any of the recognized defenses to defamation.

### a. The Article Contains False and Defamatory Statements of Fact

Defendants err in arguing that the Complaint does not adequately allege that the Article is defamatory. *See* Motion pp. 14-17. A defamatory statement is one that "expose[s] a person to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Eshelman v. Puma Biotechnology, Inc.*, No. 16-cv-18, 2018 WL 11411207, at *6 (E.D.N.C. 2018). A "publication which, when considered alone without explanatory circumstances… tends to impeach a person in that person's trade or profession [or] otherwise tends to subject one to ridicule, contempt or disgrace" is per se defamatory. *Boyce & Isley, PLLC*, 568 S.E.2d at 898. As the Complaint explains, the Article defames GPS—and constitutes libel *per se*—"[b]y falsely concluding that GPS's NPBI™ technology produces harmful byproducts," including formaldehyde, acetaldehyde, butyraldehyde, and toluene, and making similar false statements about the "characteristics, efficacy, safety, and quality of GPS's products." Compl. ¶¶ 67, 89; *see id.* ¶ 90. Such statements about any consumer product are likely "to impeach" that company's "trade or profession" and subject it to "disgrace." *Boyce & Isley, PLLC*, 568 S.E.2d at 898. It beggars belief to suggest that such false accusations would not call into question the integrity or worth of a company that creates

11

and markets *air purification* technology. Although Defendants dispute the defamatory nature of the Article on two theories, neither has merit.

First, Defendants make the counter-intuitive suggestion that if the flaws in the Article's study were as obvious as GPS alleges, the defamatory conclusions "could not be defamatory as a matter of law." Motion p. 14 (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993); *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995)). Defendants contend that a false statement of fact "cannot be defamatory if it sets out the basis of the author's assertions, so that readers can form their own opinions as to the meaning and validity of the statement." *Id.* But neither decision on which they rely supports that bold assertion.

*Chapin* and *Partington* both concern the difficult question of when statements of opinion, not objective fact, may serve as the basis for a defamation action. In *Chapin*, the court considered whether a statement describing the mark-up that a charity charged to its donors for good shipped to soldiers overseas as "hefty" could serve the basis of claim for defamation. 993 F.2d at 1093. The court explained that "'hefty' [wa]s just too subjective a word to be proved false." *Id.* And "[b]ecause the bases for the 'hefty mark-up' conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Id. Partington* is similar. *See* 56 F.3d at 1156-1157 (concluding that an author's description of an attorney poor representation of his client "can only be said to have expressed his own opinion after having outlined all of the facts that serve as the basis for [that] conclusion").

Scientific studies are not in the business of expressing the author's opinions. The whole purpose is to establish objective facts. Accusing GPS's technology of producing harmful byproducts and similar descriptions of the efficacy and quality of GPS's technology are just such statements of "objectively verifiable" facts. Compl. ¶ 90. Nothing in *Chapin* and *Partington*

suggests that Defendants are permitted to publish and disseminate such false statements with impunity as long as they publish it as part of a description of a supposed scientific study that reached such flawed conclusions.

Second, Defendants purport to catalog the Complaints' "grievances" with the study described in the Article and explain why none of them is itself a defamatory statement. Motion pp.15-17. But Defendants miss the point. As the Complaint makes clear, the defamatory statements in the Article are the "inaccurate, misleading, disparaging, and defamatory statements about the characteristics, efficacy, safety, and quality of GPS's products." Compl. ¶ 89. The errors in the study that are documented in the Complaint provide the factual support for the Complaint's allegations that Elsevier should have known that the Article's accusation was false. As Defendants' motion itself makes clear, they provide strong support at that. *See, e.g.*, Motion p. 15 (acknowledging a mistake in the Article description of the data collected in the study when the ionizer was on and off); *id.* at p. 16 (recognizing the possibility that the authors used a flawed ratio calculation); *id.* (noting that the author's failure to repeat their experiment "may be a weakness"). But the flaws in the study are not themselves the defamatory statements; and GPS has not claimed otherwise. Simply stated, the Article is false because it relies upon false data to reach false conclusions. *See Theodosakis v. Clegg*, 2017 U.S. Dist. LEXIS 13200 at *44-46 (D. Ariz. Jan. 30, 2017) (allowing a "defamation claim to proceed" where the plaintiff alleged that "the raw data did not support the published findings and, consequently, the statements made by Defendants in the Report were facially false and were harmful to" the plaintiff) (internal quotations omitted).

### b. Peer Review Does Not Shield Defendants from Liability

Next, simply because the Article underwent a peer-review process does not absolve Defendants from liability. As a preliminary matter, a peer review process is not a viable defense recognized under North Carolina law, nor do Defendants proffer even one case to support this

13

position. In their effort to assert this defense, Defendants complain that holding a publisher liable for defamation in this context would ultimately require a publisher to "review every article published in any of its journals." Motion p. 7. They also seek to hide behind the peer-review process by arguing that its "not perfect." *Id.* at 13. Under North Carolina law, Defendants are responsible for what they choose to publish regarding private parties, and what plaintiff contends was a sham peer review and negligent publishing standards (Compl. ¶¶ 8,10) does not preclude liability. Ironically, in its motion to dismiss for lack of personal jurisdiction, Elsevier Ltd. argues it does not control the peer review process without any factual support.

Moreover, the cases Defendants rely upon in an attempt to avoid defamation liability are inapposite. For example, Defendants selectively quote *Solarex Corp. v. Aarco Solar, Inc. v. Arco Solar, Inc.*, to support their conclusion that the peer review process is a central quality control feature, and thus, a defamation claim against Defendants cannot stand. 121 F.R.D. 163, 167-68 (E.D.N.Y. 1988); Motion p. 7. Dissimilar to this case, the *Solarex* plaintiff brought a patent infringement action against the defendant, who then sought to compel the plaintiff to disclose the identity of a reviewer who evaluated the manuscript submitted for publication. *Solarex*, 121 F.R.D. at 164; 166-67. In resisting disclosure, the court stated that the publisher submitted persuasive evidence showing that "*confidential* peer review is a central quality-control feature in the scientific enterprise." *Id.* at 167-68. The New York District Court did not hold nor note in dicta that peer-reviewed articles were entitled to immunity. The court was tasked with addressing a different issue entirely, the disclosure of a peer reviewer's identity. Defendants' reliance on *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579 (1993) is equally flawed. Once again, no defamation claim was alleged in *Daubert*, and the court did not hold that peer-reviewed articles were immune from

liability. Like the court in *Solarex*, the Supreme Court was tasked with addressing claims and issues that are not present here – the admission of expert scientific testimony in a federal trial.

### c. Defendants' Threadbare Policy Argument Is Unavailing

Without citing to any legal authority, Defendants further attempt to avoid defamation liability by asserting that the Article is protected by the "scholarly publishing process." Motion p. 10. Importantly however, courts have declined to extend immunity or privilege to peer-reviewed articles published in scientific journals where the claims involved allegations of false data. *See, e.g.*, *Hi-Tech Pharmaceuticals, Inc. v. Cohen*, 277 F. Supp. 3d 236, 245 (D. Mass. 2016) (agreeing about the importance of academic freedom but concluding that the "existing legal framework governing defamation" was sufficiently protective of First Amendment rights); *Theodosakis*, 2017 U.S. Dist. LEXIS 13200 at *4 (denying motion to dismiss where plaintiff alleged that statements and conclusions contained in a peer-reviewed article were based on erroneous interpretation of the data); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 2016 U.S. Dist. LEXIS 129170, at *18-19 (S.D. Cal. Sep. 21, 2016) (allowing plaintiff's claim to proceed where it pled that the peer-reviewed article was based on false data). Indeed "the injury data in the [Article cannot] be shielded by the First Amendment by virtue of being presented in an academic journal." *CrossFit*, 2016 U.S. Dist. LEXIS 129170, at *19.

Here, GPS has alleged that the conclusions in the Article published by Defendants were based on data that was false, and that the Article's descriptions of the data and methodology were false, misleading, or fabricated. Compl. ¶¶ 4,7, 39, 40, 47, 49-56. For that reason, the Article is outside the ambit of any "scholarly" privilege to secure dismissal, especially at the pleadings stage. Thus, Defendants' policy argument must fail.

15

## 4. The Allegations in the Complaint Do Not Establish that the Actual Malice Standard Applies

Finally, Defendants make a last-ditch effort to argue that the Court should dismiss the Complaint for a failure to allege "actual malice" on behalf of the Defendants. Motion pp. 17-24. As noted above, as a general matter, because the defamatory Article does not address a matter of public concern, and involves a private party, publication is sufficient to establish liability. *Araya*, 966 F. Supp. 2d at 592–93 To the extent the Article addresses a matter of public concern, under North Carolina law the standard is negligence by Elsevier in publishing the Article, which GPS alleges in great detail. Compl. ¶¶ 8, 10, 47, 65; *see Neill Grading & Const. Co. v. Lingafelt*, 606 S.E.2d 734, 741 (2005). Only where the alleged defamation concerns a public official or public figure, however, the publisher may not be held liable consistent with the First Amendment, unless the plaintiff alleges (and ultimately proves by clear and convincing evidence) that the false and defamatory speech was made with "actual malice." *New York Times Co. v. Sullivan*. 376 U.S. 254, 279-80 (1964); *see Gertz v. Robert Welch, Inc*., 418 U.S. 323, 342 (1974).

Supreme Court and Fourth Circuit precedent establishes three types of public figures: (1) all-purpose public figures who voluntarily achieve such pervasive fame or notoriety that they become public figures for all purposes and in all contexts (*e.g.*, Bill Clinton or Angelina Jolie); (2) limited-purpose public figures who voluntarily inject themselves into a particular public controversy and thereby become public figures for a limited range of issues (*e.g.*, a local faith leader who is outspoken about abortion); or (3) involuntary public figures, who become public figures without intentionally injecting themselves into any controversy (*e.g.*, Monica Lewinsky). *See Gertz*, 418 U.S. at 345; *Wells v. Liddy,* 186 F.3d 505, 532 (4th Cir. 1999). Defendants argue that GPS has established itself as a limited purpose public figure "on th[e] broad issues" of "air

16

quality and air purification," Motion p. 18, and thus is required to plead and prove that Elsevier acted with actual malice here. Those arguments should be rejected.

### a.   Defendants' Arguments Are Inappropriate At This Stage

Most fundamentally, Defendants' arguments about GPS's alleged public figure status are inappropriate at this stage of the case. The Fourth Circuit has articulated a two-part test to determine whether an individual is a limited-purpose public figure: (1) whether a particular public controversy gave rise to the alleged defamation; and if so, (2) whether the nature and extent of plaintiff's participation in that controversy was sufficient to justify public figure status. *Foretich v. Capital Cities/ABC, Inc.,* 37 F.3d 1541, 1552-53 (1994). On the second step, the court weighs five factors to determine whether public figure status is justified based on the nature and extent of the plaintiff's participation in that controversy—namely, whether (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation. *Id.* at 1553.  In a defamation case, the defendant who seeks to take advantage of the actual malice standard bears the "burden of proving that the plaintiff is a public figure to whom the *New York Times* standard applies." *Id.*

The Complaint does not come close to making sufficient allegations to meet that highly specific fact-bound test. Defendants observe that the Complaint alleges that GPS is a "leader in the air quality/purification industry," is "trusted by some of the world's leading companies," and employs individuals who regularly speak at meetings of the American Society of Heating, Refrigerating, and Air-Conditioning Engineers. Motion p. 18. But those allegations fall far short of justifying limited public figure status on any issue of public concern—much less on anything

17

related to air quality or purification. Among other shortcoming, they do not establish (or even speak to) whether there existed any particular public controversy that gave rise to the defamatory Article. They say nothing about whether GPS itself had access to the relevant channels of communication to counter-act the defamation. And they do not speak at all to any purported efforts by GPS to influence the resolution of any public controversy.

Implicitly recognizing those shortcomings, Defendants attempt to rely on extrinsic materials beyond the four corners of the Complaint to carry their burden. The Motion attaches 80 pages of newspaper articles and similar materials, which Defendants contend may be considered "to show Covid-19 prevention technique was a matter of widespread public discussion and concern." Motion pp. 19, 21. But at the motion-to-dismiss stage, a court is generally limited to the well-pled facts in the Complaint and can rely on extrinsic materials only "[u]nder narrow circumstances." *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Moreover, even if the Court were inclined to consider Defendants' exhibits, they could only be considered when the article concerns the subject matter of the case, and even then, cannot be considered for the truth therein, only to determine what was public news at that time. *See Plymouth County Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 537 (M.D.N.C. 2013); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 519 at n. 29 (W.D. Va. 2019). Even fully credited, Defendants exhibits address, at most, a fraction of the considerations that Fourth Circuit precedent deems relevant to the limited purpose public figure question. It would be highly inappropriate to dismiss GPS's claim because it did not sufficiently anticipate and rebut the Defendants' extrinsic support of an affirmative defense. Defendants do not cite a single example of a court issuing such a dismissal. We are aware of none.

     a.      **Defendants Have Not Established That GPS Is a Public Figure**

In any event, Defendants' numerous exhibits still fail to establish either that (1) any public controversy gave rise to the alleged defamation *or* (2) that the nature and extent of GPS's participation in any controversy was sufficient to justify public figure status.

A public controversy does not encompass every conceivable issue of interest to the public. *See Waldbaum v. Fairchild* Publications, 627 F.2d 1287 (D.C. Cir. 1980) ("A general concern or interest will not suffice."). The issue must be one that "was being debated publicly" and "had foreseeable and substantial ramifications for nonparticipants." *Id.* Defendants' assertion that GPS is a limited purpose public figure for purposes of all issues concerning "air quality and air purification" is thus a nonstarter. Motion p. 18. While there may exist some general interest in air quality in the abstract, Defendants have demonstrated do widespread public debate on such "broad" topics. More specifically, Defendants also maintain that "Covid-19" and "how to make buildings safe" during the COVID-19 pandemic also constitute public controversies that gained attention in "popular press." Motion pp. 20-21. While that may be true, Defendants have not established that such a public controversy gave rise to the Article at issue here. GPS's products are useful well beyond issues concerning the pandemic. They had been on the market for over 10 years before the COVID-19 pandemic. Compl. ¶ 24. And nothing in the Article's text, nor the objectives or procedures of the study it describes, suggests that the pandemic or any public controversy surrounding gave rise to the Article or its publication. Indeed, the Article mentions COVID-19 only in passing, and the study that forms the basis of the Article (and this lawsuit) did not measure the effectiveness of GPS's products in protecting against COVID-19.

Defendants also cannot make the sort of showing required to justify finding that GPS was a limited public figure for purposes of any public controversy surrounding COVID-19. Defendants do not dispute that GPS is a privately held business that is not a mainstay in the media. They do

not even allege that GPS sells its products directly to consumers either online or in retail establishments. And although GPS employees have participated in certain industry events and have spoken to its customers in various fora, they do not allege or demonstrate that GPS has access to radio, mainstream media, or other vehicles to routinely reach wide audiences. The mere fact that GPS's products are effective in protecting against an array of viruses including COVID-19 and are marketed for that purpose does not amount to "voluntarily assum[ing] a role of prominence" in any controversy or attempting to "influence the outcome of [any] controversy." *Foretich,* 37 F.3d at 1553; *see Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 589 (1st Cir. 1980) (refusing to "deem[] all corporations that sell products public figures" for purposes of "allegedly defamatory statements made about the quality of their products").

For their contrary assertion, Defendants rely heavily upon the Third Circuit's decision in *Steaks Unlimited v. Deaner*, 623 F.2d 264 (3d. Cir. 1980). But *Steaks* has little bearing here.  In that case, the Third Circuit concluded, at summary judgment, that the plaintiff's "widespread advertising campaign," which included "radio and newspaper advertisements, large signs erected at sales locations, and the distribution of handbills to persons walking near the [] store," rendered it a public figure for purposes of the quality of its products. Even accepting that such an advertising campaign could render a private company public for purposes of the First Amendment, Defendants have not established that GPS engaged in a similar public advertisement campaign here. Press releases about the installation of GPS' products in various businesses and positive articles written *about* GPS hardly show GPS "thrust[ing]" itself "to the forefront" the controversy over how to respond to the pandemic. *Gertz*, 418 U.S. at 346.

Moreover, the precedential value of *Steaks* has since been undermined even in the Third Circuit. In *United States Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914 (3d. Cir.

1990), the Third Circuit subsequently found that "an advertising campaign by a large corporation does not qualify it as a limited purpose public figure." *Id.* at 938-39. Even if though "some of the advertisements touch[ed] on matters of public concern," the court recognized that "their central thrust [wa]s commercial." *Id.* at 939. The advertisers "acted primarily to generate revenue by influencing customers, not to resolve 'the issues involved,'" as *Gertz* requires. *Id.*; *see also Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 589 (1st Cir. 1980) (refusing to "deem[] all corporations that sell products public figures" for purposes of "allegedly defamatory statements made about the quality of their products"). So it is here.

### b. The Complaint Adequately Alleges Actual Malice

Even if the heightened standard applies, the Complaint adequately alleges that the Defendants published the Article with "actual malice." A "defamatory falsehood" is made with "actual malice," within the meaning of *Sullivan* and *Gertz*, if it was "made with knowledge of its falsity or with reckless disregard for the truth." *Gertz*, 418 U.S. at 342. While that standard is demanding, it "is not an impenetrable shield for the benefit of those who engage in false speech." *Boyce & Isley*, 568 S.E.2d 893; *see, e.g.*, *Desmond v. News & Observer Publ'g Co.*, 846 S.E.2d 647, 660-75 (N.C. 2020). "Although failure to investigate will not alone support a finding of actual malice," "recklessness may be found where there are obvious reasons to doubt the veracity" of an author's claims. *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 688, 692. Here, the Complaint alleges that Defendants published the Article with the requisite "actual malice." Compl. ¶ 94. That claim is supported by factual allegations that Defendants' peer review process was deeply flawed (*id.* ¶¶ 59-65), that it should have readily appreciated the flawed and misrepresented data reported in the study, and that, even after GPS informed Defendants of the Article's flaws and the authors' biases and financial conflicts, Defendants refused to retract the Article or take any other corrective action (*id.* ¶¶ 10-11, 78-85). That is more than sufficient to survive dismissal.

21

**B.** **GPS HAS ESTABLISHED A VIABLE CLAIM ARISING UNDER UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

GPS has also adequately pled a claim against the Defendants under North Carolina's Unfair and Deceptive Trade Practices Act. N.C. Gen. Stat. § 75-1.1(a) declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-16 provides a right of action to any person injured "by reason of any act or thing done … in violation of [Chapter 75]" to recover treble damages from the violator. To recover on a claim of unfair and deceptive trade practices under North Carolina law, a plaintiff must establish: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused injury to the claimant." *Craven v. Cope*, 656 S.E.2d 729, 733 (N.C. Ct. App. 2008); N.C. Gen. State. §§ 75-1.1, 16. "[A] libel per se of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of [Section 75-1.1], which will justify an award of damages … for injuries proximately caused." *Boyce & Isley, PLLC*, 568 S.E.2d at 902 (N.C. App. 2002) (quoting *Ellis v. Northern Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990)). Because GPS has sufficiently pled that it was injured on the basis of Defendants' libel per se, it has properly pled claim for unfair and deceptive trade practices.[4]

**CONCLUSION**

---

[4] Defendants argue that a business may assert a claim under Section 75-1.1 only where "1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, 2) the businesses are competitors, or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public." Motion p. 24 (quoting *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1020 (E.D.N.C. 2015)). *Exclaim* addressed, outside the context of a defamation claim, when a business could show that a defendant's conduct was "in or affecting commerce." *See* 134 F. Supp. 3d at 1020. But the North Carolina Supreme has clearly held that, with qualifications not relevant here, "libel *per se* in a business setting is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75–1.1." *Ellis*, 388 S.E.2d at 131; *see id.* (explaining that "certain transactions already subject to pervasive and intricate statutory regulation, such as securities transactions, were not intended by the legislature to be included within the scope of the statute).

22

For the foregoing reasons, GPS respectfully requests the denial of Defendants' Motion to Dismiss the Complaint, and for all other relief, under law and equity, to which GPS may be justly entitled.

Dated: May 6, 2022                                    MCGUIREWOODS LLP

                                                      By: /s/ Robert A. Muckenfuss
                                                          Robert A. Muckenfuss (SBN #28218)
                                                          Kelly Warlich (SBN #51053)
                                                          201 North Tryon Street, Suite 3000
                                                          Charlotte, North Carolina 28202-4011
                                                          704.343.2052 (Direct Line)
                                                          704.444.8707 (Direct FAX)
                                                          rmuckenfuss@mcguirewoods.com (E-mail)
                                                          kwarlich@mcguirewoods.com (E-mail)

                                                          Elizabeth Zwickert Timmermans
                                                          (SBN #40205)
                                                          Jonathan Y. Ellis (SBN #41220)
                                                          501 Fayetteville Street, Suite 500
                                                          Raleigh, NC 27601
                                                          Tel: (919) 755-6600
                                                          Fax: (919) 755-6699
                                                          eztimmermans@mcguirewoods.com
                                                          jellis@mcguirewoods.com

                                                          *Attorneys for Plaintiff Global Plasma
                                                          Solutions, Inc.*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on this **6th day of May, 2022**, the foregoing **GLOBAL PLASMA SOLUTIONS, INC.'S OPPOSITION TO ELSEVIER INC. AND ELSEVIER LTD.'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** was filed electronically with the Clerk of Court for the Western District of North Carolina by using the CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

/s/*Robert A. Muckenfuss*
Robert A. Muckenfuss

24