**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| GLOBAL PLASMA SOLUTIONS, INC., | |
|     *Plaintiff*, | |
| v. | Civil Action No. 3:22-cv-00034 |
| ELSEVIER INC. and ELSEVIER LTD., | |
|     *Defendants*. | |

**GLOBAL PLASMA SOLUTIONS, INC.'S OPPOSITION TO ELSEVIER INC. AND ELSEVIER LTD.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR <u>FAILURE TO STATE A CLAIM</u>**

Plaintiff Global Plasma Solutions, Inc. ("GPS"), respectfully submits its response in opposition to Defendants Elsevier Inc. and Elsevier Ltd.'s (collectively "Elsevier") Motion to Dismiss for Failure to State a Claim (the "Motion").

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................ 1

II.    LEGAL STANDARD ................................................................................. 1

III.   ARGUMENT .............................................................................................. 3

   A.   GPS States a Defamation Claim Against Defendants ........................................ 4

      1.   *GPS Alleges Common-Law Defamation Against Elsevier Ltd. and Elsevier Inc.* .......... 4

      2.   *GPS Is Not Required to Allege Fault By Elsevier or Its Agents* .................... 6

      3.   *The Complaint Adequately Alleges Negligence by Elsevier and Its Agents* ........... 9

         a.   *The Complaint adequately alleges that Elsevier itself was negligent* ........... 9

         b.   *The Complaint also adequately alleges that Elsevier is responsible for the negligence of its editor and peer reviewers* ................... 14

      4.   *The First Amendment's Actual Malice Standard Provides No Basis to Dismiss the Complaint* ........................................... 16

         a.   *GPS is not required to plead and prove that Elsevier acted with "actual malice."* . 16

         b.   *The Complaint adequately alleges actual malice* ................... 22

   B.   GPS States A Claim Under the UDTPA Against Defendants ......................... 23

IV.    CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................2

*Boyce & Isley, PLLC v. Cooper*,
153 N.C. App. 25, 568 S.E.2d 893 (2002)............................................4, 7, 22, 23

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
633 F.2d 583 (1st Cir. 1980)............................................................................21

*Cantrell v. Forest City Pub. Co.*,
419 U.S. 245 (1974)..........................................................................................11

*Carr v. Forbes, Inc.*,
259 F.3d 273 (4th Cir. 2001) ............................................................................17

*Craven v. Cope*,
656 S.E.2d 729 (N.C. Ct. App. 2008) ..............................................................23

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
No. 14-cv-1191, 2016 WL 5118530 (S.D. Cal. Sept. 21, 2016)......................12

*D.A.R.E. v. Rolling Stone Magazine*,
101 F. Supp. 2d 1270 (C.D. Cal. 2000), *aff'd* 270 F.3d 793 (9th Cir. 2001)...................11, 12

*Desmond v. News & Observer Publ'g Co.*,
846 S.E.2d 647 (N.C. 2020)..............................................................................22

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985)........................................................................................7, 8

*Ellis v. Northern Star Co.*,
388 S.E.2d 127 (N.C. 1990)..............................................................................23

*Everhart v. O'Charley's, Inc.*,
200 N.C. App. 142, 683 S.E.2d 728 (2009)...................................................9, 10

*Exclaim Mktg., LLC v. DirecTV, LLC*,
134 F. Supp. 3d 1011 (E.D.N.C. 2015).........................................................23, 24

*Feminist Majority Found. v. Hurley*,
911 F.3d 674 (4th Cir. 2018) .............................................................................2

*Foretich v. Capital Cities/ABC, Inc.*,
    37 F.3d 1541 (1994)..................................................................................16, 17, 19, 20

*Gammons v. N.C. Dept. of Human Res.*,
    344 N.C. 51, 472 S.E.2d 722 (1996)...................................................................14

*Gay v. Wall*,
    761 F.2d 175 (4th Cir.1985) ..........................................................................2, 15

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)................................................................................. *passim*

*Glenn v. Wagner*,
    313 N.C. 450, 329 S.E.2d 326 (1985)......................................................................6

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) ......................................................................2, 13, 15

*Golden Bear Distributing Systems v. Chase Revel, Inc.*,
    708 F.2d 944 (5th Cir. 1983) ..............................................................................22

*Goldfarb v. Mayor and City Council of Baltimore*,
    791 F.3d 500 (4th Cir. 2015) ..............................................................................18

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ..............................................................................16

*Herbert v. Lando*,
    441 U.S. 153 (1979)..........................................................................................15

*Hi-Tech Pharmaceuticals, Inc. v. Cohen*,
    277 F. Supp. 3d 236 (D. Mass. 2016) ....................................................................12

*Holcomb v. Colonial Assocs., L.L.C.*,
    358 N.C. 501, 597 S.E.2d 710 (2004)................................................................14, 15

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979)..........................................................................................18

*Jien v. Perdue Farms, Inc.*,
    No. 1:19-CV-2521-SAG, 2021 WL 927456 (D. Md. Mar. 10, 2021) ......................................6

*Leask v. Robertson*,
    No. 2:21-CV-2367-DCN, 2022 WL 673760 (D.S.C. Mar. 7, 2022) ........................................8

*Lluberes v. Uncommon Productions, LLC*,
    663 F.3d 6 (1st Cir. 2011)..................................................................................18

iii

*Masson v. New Yorker Magazine*,
  960 F.2d 896 (9th Cir. 1992) ........................................................................11

*McKiver v. Murphy-Brown, LLC*,
  980 F.3d 937 (4th Cir. 2020) ..........................................................................9

*Mutafis v. Erie Ins. Exch.*,
  775 F.2d 593 (4th Cir. 1985) ........................................................................4, 7

*Mylan Labs., Inc. v. Matkari*,
  7 F.3d 1130 (4th Cir. 1993) .............................................................................1

*Neill Grading & Const. Co. v. Lingafelt*,
  606 S.E.2d 734 (2005) ..................................................................................7, 9

*New York Times Co. v. Sullivan*.
  376 U.S. 254 (1964) ...................................................................................16, 22

*Next Techs. Inc. v. Beyond the Off. Door, LLC*,
  992 F.3d 589 (7th Cir. 2021) .........................................................................21

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013) ..........................................................................12

*Phillips v. LCI Int'l Inc.*,
  190 F.3d 609 (4th Cir.1999) .......................................................................2, 15

*Price v. Viking Penguin, Inc.*,
  881 F.2d 1426 (8th Cir. 1989) .......................................................................12

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ...........................................................................2

*Secord v. Cockburn*,
  747 F. Supp. 779 (D.D.C. 1990) ....................................................................12

*Smith v. Hogan*,
  794 F.3d 249 (2d Cir.2015)...............................................................................2

*Snyder v. Phelps*,
  562 U.S. 443 (2011).........................................................................................8

*Spainhour v. Lowe's Cos. Inc.*,
  No. 5:16-cv-00138, 2017 WL 1362859 (W.D.N.C. Apr. 12, 2017).................2

*Steaks Unlimited v. Deaner*,
  623 F.2d 264 (3d. Cir. 1980)......................................................................20, 21

iv

*Taylor v. Kinston Free Press Co.*,
   237 N.C. 551, 75 S.E.2d 528 (1953) ............................................................................5

*Tharp v. Media Gen., Inc.*,
   987 F. Supp. 2d 673 (D.S.C. 2013) ............................................................................10

*Theodosakis v. Clegg*,
   2017 WL 1294529 (D. Ariz. Jan. 30, 2017) ............................................................12

*United States Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
   898 F.2d 914 (3d. Cir. 1990) ....................................................................................21

*Waldbaum v. Fairchild*,
   627 F.2d 1287 (D.C. Cir. 1980) ................................................................................17

*Wells v. Liddy*,
   186 F.3d 505 (4th Cir. 1999) ....................................................................................16

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) ..............................................................................13, 18

**Statutes**

N.C.G.S. § 75-1.1 ..................................................................................................3, 23

N.C.G.S. § 75-1.1(a) ..................................................................................................23

N.C.G.S. § 75-16 ........................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 12(b) ....................................................................................................2

Fed. R. Civ. P. 12(d) ....................................................................................................2

Fed. R. Civ. P. 56 .........................................................................................................2

# I.    INTRODUCTION

This case concerns an effort by the world's largest scientific publisher, Elsevier, to destroy the reputation and business of a small North Carolina company through the publication of a false and fabricated scientific study (the "Article"). In 2021, Elsevier published and disseminated an article that specifically and prominently named GPS's propriety Needlepoint Bipolar Ionization ("NPBI™") air purification technology and reached the false conclusion that GPS's products emit harmful byproducts. That publication has resulted in massive and irreparable harm to GPS and has caused numerous businesses and institutions across the country to forego implementing GPS's effective technology. GPS's losses exceed $1.8 billion.

Elsevier does not and cannot dispute the Article's falsity or the massive harm that it has caused GPS. Instead, Elsevier claims that it cannot be held responsible for the harm its own publication caused because it has intentionally structured its business so that it and its agents are unable to prevent the publication and circulation of damaging defamatory falsehoods about a private company. The responsibility for what Elsevier publishes, it claims, rests entirely on a purportedly independent editor and a group of volunteer independent peer reviewers. On a motion to dismiss, that argument is as inappropriate and irrelevant as it is galling. Even if neither the editor's nor the peer reviewers' knowledge and conduct are attributable to Elsevier, GPS adequately alleges that Elsevier itself committed defamation without resorting to principles of vicarious liability. And, in any event, fact-bound questions concerning the editor's and the peer reviewers' confidential contractual relationship with Elsevier cannot be properly resolved without discovery. They are questions for the fact finder. The Motion should be denied.

# II.    LEGAL STANDARD

In considering a 12(b)(6) motion, a court must "accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff." *Mylan Labs., Inc. v.*

*Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) "A district court can properly grant a Rule 12(b)(6) dismissal only if the complaint fails to 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)); *see Spainhour v. Lowe's Cos. Inc.*, No. 5:16-cv-00138, 2017 WL 1362859, at *3 (W.D.N.C. Apr. 12, 2017). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. As the Fourth Circuit has warned, "courts must be careful not to import the summary-judgment standard into the motion-to-dismiss stage." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015).

Although a court may consider documents attached to or incorporated into the complaint, documents not attached to a complaint are integrated only if they are both "integral to and explicitly relied on in the complaint" and the plaintiff does not challenge the authenticity of the document. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Moreover, even if a complaint includes "a few quotes from and references to" a document, that document may not be integral to the complaint where the "claims do not turn on" statements in the document. *Goines*, 822 F.3d at 166; *see Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir.2015) (document with "no independent legal significance to [plaintiff's] claim" is not integral to complaint).

Consideration of documents not integrated into the complaint will convert a motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(b), 12(d), 56. Such a conversion is inappropriate before reasonable discovery. *See Gay v. Wall*, 761 F.2d 175, 178 (4th Cir.1985) ("Because [plaintiff] was not afforded an opportunity for reasonable discovery, the district court's

2

treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion.").

## III.    ARGUMENT

In its First Amended Complaint ("Complaint" or "FAC"), GPS has pled sufficient factual allegations to support its claims for defamation and a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1.

As to the defamation claim, Elsevier no longer disputes that GPS has adequately alleged all of the elements of libel *per se* under North Carolina common law as to Elsevier Ltd.  And its only argument concerning Elsevier Inc. with respect to those elements is an inappropriate factual dispute about that entity's involvement in the publication.  In effect, then, the parties' dispute is now a dispute only about whether GPS must allege something more than common-law defamation—namely, whether GPS must also allege, and has adequately alleged, that Elsevier not only published a false and defamatory Article that harmed GPS, but whether it published those falsehoods negligently or with actual malice.  Because GPS does not need to allege fault to survive a motion to dismiss and because, even if fault were required, the allegations are more than sufficient, those arguments fail.

As to the UDTPA claim, Elsevier's sole argument for dismissal is that GPS cannot bring this cause of action because Elsevier and GPS are neither competitors nor in business together. But a claim of libel *per se* satisfies the UDTPA standard as a matter of law.  Because GPS adequately alleges such defamation, it adequately alleges a violation of UDTPA as well.  And even if liber *per se* were not available, GPS has independently and sufficiently alleged each element of a UDTPA claim.

**A.      GPS States a Defamation Claim Against Defendants**

Elsevier fails to justify dismissal of GPS's defamation claim against either corporate entity. As a general matter, a plaintiff states a defamation claim under North Carolina common law by alleging: (1) the defendant made false, defamatory statements, (2) of or concerning the plaintiff, (3) which were published to a third person, and (4) the defendant thereby caused injury to the plaintiff. *See Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002). A publication that "tends to impeach a person in that person's trade or profession [or] otherwise tends to subject one to ridicule, contempt or disgrace" constitutes libel *per se* for which damages are presumed. *Id.* at 898. Although Elsevier fails to acknowledge it, when a defamatory statement concerns neither a public figure nor public controversy, the common-law elements of defamation are all a plaintiff must plead and prove. *See Mutafis v. Erie Ins. Exch.*, 775 F.2d 593, 595 (4th Cir. 1985).

GPS has stated a defamation claim against Elsevier under these standards, and Elsevier's arguments to the contrary are unpersuasive. Elsevier disputes only one element of defamation with respect to the actions of one corporate entity—by attempting to create a factual dispute about Elsevier, Inc.'s involvement in publication. That argument is plainly inappropriate on a motion to dismiss. The rest of Elsevier's motion focuses on disputing GPS's allegations of fault. But at least at this stage of the case, no showing of fault is required. And even if it were, dismissal still would be inappropriate because the Complaint adequately pleads facts to show that Elsevier itself, as well as its agents, published the defamatory statements with the requisite level of fault.

### 1.    GPS Alleges Common-Law Defamation Against Elsevier Ltd. and Elsevier Inc.

With respect to the common-law elements of defamation, Elsevier argues only that GPS has not adequately alleged that Elsevier Inc. was involved in the publication of the defamatory

4

Article because the footer of the Article states that it was "[p]ublished by Elsevier Ltd.," Motion p. 5 (quoting Doc. 39-1 p.2), and does not mention Elsevier Inc. *Id.* That argument lacks merit.

As the Complaint alleges and Elsevier acknowledges, Elsevier Ltd. is a United Kingdom corporation with its principal place of business in London, UK. FAC ¶ 41; *see* Motion p. 4. Elsevier Inc. is the company's U.S. affiliate, incorporated in Delaware with its principal place of business in New York. FAC ¶ 40; *see* Motion p. 4. The Complaint expressly alleges that the domestic entity, Elsevier Inc., was involved in the publishing of the defamatory Article. *See* FAC ¶ 153 (alleging that "Defendants" (plural) "have intentionally published false statements to the public at large through publishing the First Study"); *see also id.* p.1 (referring to Elsevier Inc. and Elsevier Ltd. "collectively" by their shared corporate name "Elsevier").

The factual allegations that support Elsevier's domestic arm's involvement in the domestic publication are more than sufficient. "It is well settled that all who take part in the publication of a libel or who procure or command libelous matter to be published may be sued by the person defamed either jointly or severally." *Taylor v. Kinston Free Press Co.,* 237 N.C. 551, 552, 75 S.E.2d 528, 529 (1953). Whatever artificial distinctions might exist between Elsevier's various related corporate entities, the Article was branded and disseminated under their shared corporate name. *See* Doc. 39-1 p.2. The Complaint alleges, and Elsevier does not contest, that the co-branded Article was published domestically. *See* FAC ¶ 44 (alleging that the Article was "accessible in or mailed to North Carolina"). And it alleges that the defendants, collectively, maintain a registered agent in Raleigh, North Carolina; target North Carolina residents; and have contracts with Duke University and Western Carolina University, under which those North Carolina schools pay for subscriptions to "Elsevier's ScienceDirect" service, which hosts an electronic version of the Article. *Id.* ¶ 45. Suffice it to say, it is at least *plausible* that the domestic

Elsevier entity participated in the publication of an article under its corporate name, targeting North Carolina residents, concerning a scientific study conducted on the technology of a North Carolina company, and distributed through North Carolina channels. Indeed, it is utterly *implausible* that Elsevier Inc. was not involved in publishing the Article where it was registered to do business.

Even if Elsevier's corporate entities are legally distinct—*but see* Opp. to 12(b)(2) Motion pp. 3-16—Elsevier's claims about which corporate entity did what are no basis to dismiss the Complaint against Elsevier Inc. at the pleading stage. *See Jien v. Perdue Farms, Inc.*, No. 1:19-CV-2521-SAG, 2021 WL 927456, at *3 (D. Md. Mar. 10, 2021) (declining to dismiss complaint where similar allegations were made against multiple defendants and holding that factual disputes as to which corporate entity was responsible should be raised at a later stage of litigation). For purposes of this Motion, there is no need to resolve any alter ego questions or to pierce the corporate veil to reach Elsevier Inc. when GPS alleges that Defendants both published the Article. *See* FAC ¶ 153; *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) (discussing the purpose of piercing the corporate veil).

### 2. *GPS Is Not Required to Allege Fault By Elsevier or Its Agents*

Beyond Elsevier's attempt to raise a factual dispute about Elsevier Inc.'s involvement, its arguments for dismissal focus entirely on whether GPS has adequately alleged fault on the part of Elsevier and its agents—placing blame instead on a purportedly independent editor, volunteer peer reviewers, and the Article's authors. To be clear, GPS's position is that it has alleged a sufficient basis to find that Elsevier is at fault for the publication. *See infra* pp. 9-13. But more fundamentally, this Court can reject Elsevier's fault-based arguments because the Complaint provides no basis to conclude that the Article addressed a matter of public concern, without which neither North Carolina law nor the First Amendment requires any showing of fault.

6

Elsevier does not dispute that, as a matter of purely North Carolina law, Elsevier's publication is libel *per se* for which it may be held liable. *See Boyce & Isley, PLLC*, 568 S.E.2d at 897. It asserts, however, that under *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974), the First Amendment requires GPS to establish some level of "fault." Motion p. 5. That is incorrect. In *Gertz*, the Supreme Court held that a publisher could not rely on a First Amendment "actual malice" defense to a defamation claim based on its publication of an article discussing a private individual's purported involvement in a matter of public concern. *Gertz*, 418 U.S. at 346. The Court explained that, in that context, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Id.* at 347. Elsevier fixates on the "fault" requirement in this passage, suggesting that a publisher can never be liable for defamation without such a showing. *See* Motion p. 5.

But ten years after *Gertz*, the Supreme Court clarified that the fault requirement applies *only* where the allegedly defamatory speech concerns a matter of public concern. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 763 (1985). As the Court explained in *Dun & Bradstreet, Inc.*, it "ha[d] never considered whether the *Gertz* balance obtains when the defamatory statements involve no issue of public concern." 472 U.S. at 757. Later cases recognize that only if the defamatory statement is on a matter of public concern must a private plaintiff show any level of "fault" by the defendant. *See Mutafis.*, 775 F.2d at 595 ("[T]he principles of *New York Times* and *Gertz* had no application where the speech concerned no public issue but was speech solely in the individual interest of the speaker and was on a matter of purely private concern."); *Neill Grading & Const. Co. v. Lingafelt*, 606 S.E.2d 734, 739 (2005) ("[W]here the plaintiff is a private figure, and the speech at issue is of private concern, a state court is free to

apply its governing common law without implicating First Amendment concerns."). And the Supreme Court has recently confirmed that "restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011).

The Complaint provides no basis for concluding that the defamatory speech here—*i.e.*, the Article—discusses a matter of public concern and thus no showing of fault is required. "Whether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record." *Dun & Bradstreet, Inc.*, 472 U.S. at 761. The Complaint alleges that Elsevier published the defamatory Article about GPS, a small private company, falsely claiming that GPS's products release dangerous byproducts, a topic on which there was no previous debate or evidence. *See* FAC ¶¶ 71, 77, 83. It further alleges that the defamatory publication was made to the specific audience of the journal *Building and Environment*, which comprises "civil engineers, environmentalists, planners, architects and designers." FAC ¶ 121. In other words, the Complaint establishes that the Article discusses whether a product not sold to the general public leads to byproduct formation—a topic on which there was no prior debate—in a journal targeted to a limited business audience. FAC ¶¶ 71,77,83. Viewing those allegations in the light most favorable to GPS, the Court cannot conclude that the defamatory speech addresses a matter of public concern. *See Leask v. Robertson*, No. 2:21-cv-2367, 2022 WL 673760, at *8 (D.S.C. Mar. 7, 2022) (denying motion to dismiss where it was not clear from complaint if issue was of public concern). And even if the Complaint did tend to indicate that the Article discusses a matter of public concern, the Complaint is not the "whole record." *Dun & Bradstreet, Inc.*, 472 U.S. at 761. Elsevier's fault-based arguments should be denied on this basis alone.

### 3. The Complaint Adequately Alleges Negligence by Elsevier and Its Agents

Even if the Court were to conclude that some level of fault must be alleged, Elsevier's Motion should still be denied. Under *Gertz* and North Carolina law, a private plaintiff must establish only negligence if a defamatory statement addresses a matter of public concern. *See Neill Grading & Const. Co.*, 168 N.C. App. at 47, 606 S.E.2d at 741. The Complaint adequately alleges negligence by Elsevier on two independent grounds. First, the Complaint plausibly alleges that Elsevier itself—apart from its editor or peer reviewers—negligently published the defamatory falsehoods contained in the Article. Second, the Complaint adequately alleges a sufficient basis to impute the negligence of Elsevier's editor and peer reviewers to Elsevier.

### a. The Complaint adequately alleges that Elsevier itself was negligent

GPS adequately pleads that Elsevier's own negligent actions or policies caused or contributed to the defamatory conduct. *See McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 970-71 (4th Cir. 2020) ("[I]n contrast to vicarious liability for acts of its contractor, Appellant's liability is premised on the corporation's *own* act[.]") (emphasis in original); *Everhart v. O'Charley's, Inc.*, 200 N.C. App. 142, 153, 683 S.E.2d 728, 737 (2009) (the direct liability of a corporation may be based on "the corporation's acts or policies"). The Complaint alleges:

- Elsevier itself had a contractual right to reject the Article if it contained defamatory material or anything that could be harmful to a third party. FAC ¶ 16.

- Elsevier was put on notice or purposefully avoided knowing of several obvious issues with the Article leading to its false conclusion—including the lack of an experimental control, the lack of a stable testing environment, the deceptive manipulation of data, the suppression of data contradictory to the Article's conclusions. FAC ¶¶ 8-9, 18, 77, 93-95, 102-06.

- Elsevier established and maintained a fundamentally flawed peer review process that either entirely missed or ignored the egregious errors outlined above. FAC ¶¶ 109-10.

- As a result, Elsevier published and caused the broad dissemination of false and defamatory speech that caused enormous harm to GPS. FAC ¶¶ 37, 107.

9

- Even after GPS directly notified Elsevier of the invalidity, unreliability, and falsity of the Article, and requested that Elsevier retract the Article to mitigate GPS's damages, Elsevier refused to take corrective action. FAC ¶¶ 22-23.

- To the contrary, Elsevier published a second article by the some of the same authors, again naming and targeting GPS. FAC ¶ 144.[1]

- Although data from the study underlying the second article contradicted the Article, Elsevier falsely published that the second study was consistent with the conclusions of the defamatory Article. FAC ¶¶ 145-51.

Those allegations are more than sufficient to establish that Elsevier's publication of the Article was the result of its own (at least) negligent conduct.

Elsevier principally protests that it cannot be held responsible for the failures of the editor and peer reviewers to prevent false and defamatory statements in the Article from being published, because it did not employ the editor or the peer reviewers. As Elsevier puts it, the "entire editorial and peer review process is . . . set up so that Elsevier does not participate in it." Motion p. 13. Even if that were true (and we have our doubts, *see* Opp. to 12(b)(2) Motion), that statement does not exonerate Elsevier; it condemns them. North Carolina law imposes direct liability on a corporation based on "the corporation's acts or policies." *Everhart*, 200 N.C. App. 142, 153. Even if neither the editor nor peer reviewers are employed by Elsevier, the failure of Elsevier itself to exercise any quality control over its own editorial process, especially in the face of a risk of publishing statements that impeach a person in that person's trade or profession, is itself a failure to exercise reasonable care.

Such a hands-off approach cannot protect a publisher from liability for the defamatory speech that it publishes. *See, e.g.*, *Tharp v. Media Gen., Inc.*, 987 F. Supp. 2d 673, 689 (D.S.C. 2013) (defendant's failure to create a sufficient vetting protocol "to protect against . . . reporting

---

[1] Contrary to Elsevier's assumption, the Complaint's allegations about the second article are not presented as a standalone defamation claim. They serve to further underscore Elsevier's repeated neglect if not willful ignorance of the falsity of the original Article's claims.

error" could support finding of negligence in defamation claim by private plaintiff). If anything, as the trusted publisher of peer reviewed journals, Elsevier should be held to a *higher standard* of quality. "Readers of reputable [publications] are far more likely to trust the verbatim accuracy of the stories they read than are the readers of supermarket tabloids or even daily newspapers" and as a result "[t]he harm inflicted by a misstatement in a publication known for scrupulously investigating the accuracy of its stories can be far more serious than a similar misstatement in a publication known not to do so." *Masson v. New Yorker Magazine*, 960 F.2d 896, 901-02 n.5 (9th Cir. 1992) (remanding for trial on libel as to defendant *The New Yorker*).

The cases relied upon by Elsevier do not hold otherwise. *Cantrell v. Forest City Pub. Co.*, 419 U.S. 245 (1974), broadens the liability of a publisher for false light invasion of privacy by establishing that it may be liable for published falsehoods through *respondeat superior* even if it would otherwise escape blame. *Id.* at 246-47. There, a reporter for the *Plain Dealer* wrote an article containing "calculated falsehoods" about the plaintiffs. *Id.* at 253. The Supreme Court held that even though there was no evidence that the publisher of the *Plain Dealer* itself "had knowledge of the inaccuracies contained in [the reporter's] article," there was sufficient evidence for the jury to find that *the reporter* did and, because writing the article was within the scope of his employment, the publisher could be held liable for defamation "under traditional doctrines of *respondeat superior*." *Id.* at 253. Contrary to Elsevier's assertion, however, *Cantrell* does not hold that publishers may be liable *only* under vicarious liability principles—only that they *can* be.

*D.A.R.E. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270 (C.D. Cal. 2000), *aff'd* 270 F.3d 793 (9th Cir. 2001), is similarly inapposite. There, at summary judgment, the parties stipulated that the subject of the defamatory piece was a public figure and thus the plaintiff had to prove that the publisher acted with actual malice. *Id.* at 1277-78. And yet, there was no allegation that the

publisher *itself* acted with actual malice. The only question was whether, under vicarious liability principles, the author's knowledge of falsity could be imputed to *Rolling Stone* to prove actual malice. *Id.* at 1278-79. Even assuming *D.A.R.E.* is at all relevant where the standard of fault is negligence, GPS *has* alleged that the Elsevier itself acted with negligence—so the Central District of California's application of California vicarious liability principles is irrelevant. And Elsevier's other cases similarly concern circumstances where, unlike here, the plaintiffs failed to allege actual malice on the part of the publisher itself. *See Secord v. Cockburn*, 747 F. Supp. 779 (D.D.C. 1990); *Price v. Viking Penguin, Inc.*, 881 F.2d 1426 (8th Cir. 1989). They have no bearing here.

Elsevier's threadbare policy arguments are no more persuasive. Elsevier complains that if, despite its peer review process, it is liable for defamation, it may have to ensure the quality of every article it publishes, "destr[oying]" academic publishing. Motion p. 14. But peer-reviewed articles enjoy no special immunity from, or privilege against, defamation. *See, e.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013); *Hi-Tech Pharmaceuticals, Inc. v. Cohen*, 277 F. Supp. 3d 236, 245 (D. Mass. 2016); *Theodosakis v. Clegg*, 2017 WL 1294529, at *13 (D. Ariz. Jan. 30, 2017), *report and recommendation adopted*, No. 14-cv-2445, 2017 WL 1210345 (D. Ariz. Mar. 31, 2017); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14-cv-1191, 2016 WL 5118530, at *19 (S.D. Cal. Sept. 21, 2016). And consistent with these decisions, there is no basis to conclude that holding Elsevier responsible for its own publications will remotely destroy academic publishing on matters of public concern.

To avoid negligence liability, all Elsevier must do is exercise reasonable care. It is too early in this case to ultimately determine what reasonableness might require in this context. For now, it is enough that the Complaint plausibly alleges that Elsevier's policies fell far short of the reasonable steps necessary to prevent the publication of an Article that is based on false data and

contains descriptions of that data and the study's methodology that are false, misleading, or fabricated.  *See* FAC ¶¶ 1-2, 4, 6, 11-12, 17-18, 33, 36, 75, 77, 88-99.

Finally, Elsevier denies GPS's allegations that Elsevier itself made the decision to refer to GPS and its products by name in the Article.  *See* FAC ¶ 73.  That dispute is not a basis to dismiss the defamation claim for multiple reasons.  Most fundamentally, GPS's defamation claim simply does not rest on the disputed allegations.  Even if Elsevier took no affirmative steps to dictate the content of the Article, the Complaint adequately alleges that Elsevier negligently *published* the defamatory Article.  Nothing more is required.  In any event, Elsevier's dispute falls flat.  Elsevier concedes elsewhere that its editor and peer reviewers were involved in the decision to include GPS's location.  *See* Opp. to 12(b)(2) Motion.  Elsevier claims that extraneous emails not attached or incorporated into the complaint show "beyond doubt" that the Article's authors independently determined to name GPS and its products.  Motion p. 9.  This Court has no occasion to consider Elsevier's extraneous emails on a motion to dismiss.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("Courts . . . should focus their inquiry on the sufficiency of the facts relied upon by the plaintiffs in the complaint."); *see also Goines*, 822 F.3d at 166 ("a few quotes from and references to" a document are insufficient to integrate it into the complaint when the plaintiff's "claims do not turn on" statements in the document).  But even if the Court were to consider the documents Elsevier has proffered, the Court must read them in the light most favorable to GPS.  Reading the proffered emails in that light shows that, at a minimum, the architect of the Article, Dr. Stephens, considered giving Elsevier the choice to name GPS.  *See* Motion p. 9.  Who made or contributed to the ultimate decision is a question that should be left until after GPS has an opportunity to obtain discovery about the communications that followed.

b.     *The Complaint also adequately alleges that Elsevier is responsible for the negligence of its editor and peer reviewers*

Even if GPS needed to rely on vicarious liability, GPS also adequately pleads that Elsevier was negligent through the acts of individuals who failed in their duty of reasonable care by approving the Article for publication.  The Complaint alleges that the Article's peer review and editorial process were flawed and failed to adhere to the high standards Elsevier publicly touts. FAC ¶¶ 109-10.  It alleges that the process missed the blatant biases of the Article's authors and numerous violations of scientific integrity and distortions of data.  FAC ¶ 107.  And the Complaint alleges that "[t]he peer review and editorial processes alerted *Elsevier* to each of [the] issues" with the Article before it was published.  *See, e.g.*, FAC ¶ 18 (emphasis added).

Elsevier insists that GPS has not sufficiently alleged that Elsevier's editors and peer reviewers were employed or controlled by Elsevier for purposes of attributing their knowledge and conduct to Elsevier.  It interprets the allegations in the Complaint in the light most favorable to itself, and it disputes factual allegations in the Complaint using documents not integrated into the Complaint.  Motion p. 10-12.  Even if Elsevier's—inappropriate at this stage—argument that the editors are independent contractors is true, however, it is still not dispositive.  "[A]n independent contractor can, in certain respects, be an agent."  *Holcomb v. Colonial Assocs., L.L.C.*, 358 N.C. 501, 509, 597 S.E.2d 710, 716 (2004).  Whether an independent contractor is an agent depends upon the degree of control exercised by the entity who hired the independent contractor.  *Gammons v. N.C. Dept. of Human Res.*, 344 N.C. 51, 58, 472 S.E.2d 722, 726 (1996).  And here, GPS has alleged that Elsevier's editorial process was a sham, FAC ¶ 5, and that Elsevier controlled publication, *id.* ¶ 16, controlled the format and presentation of the Article, *id.* ¶ 124, and received knowledge through the editorial process.  *Id.* ¶¶ 8-9, 18, 77, 93-95, 102-06.  These allegations are

14

enough to support vicarious liability at this early stage. *See also* Opp. to 12(b)(2) Motion pp. 21-25.

Elsevier offers only factual arguments in opposition. It first suggests the dubious inference that one of its editors, a retired professor, cannot be employed by Elsevier because he retains his university email address. *See* Motion p. 10. That inference is illogical and also fails to interpret the facts in the light most favorable to GPS.

Elsevier then proffers a webpage that was not referenced in the Complaint to prove its editors and peer reviewers are independent. *See* Motion pp. 11-12. The webpage cannot be considered because it is not integrated in the Complaint. *See Goines*, 822 F.3d at 166. GPS cites only other parts of Elsevier's website, *see* FAC ¶¶ 18 n.2, 98, 108, 111-12, 121-22,[2] and only to show that the process which led to Elsevier's publication of the Article "fl[ew] in the face of Elsevier's own peer review protocols." FAC ¶ 108. GPS's allegations thus specifically challenge the truthfulness of the representations about peer review on the website—at least as to the review of the Article. Because the webpages Elsevier cites are not referenced in the complaint, and GPS has not accepted as true even those pages it does cite, Elsevier's webpages cannot be considered without inappropriately converting the motion to dismiss into a summary judgment motion. *See Phillips*, 190 F.3d at 618; *Gay*, 761 F.2d at 178; *see also Herbert v. Lando*, 441 U.S. 153, 157-58 (1979) (allowing defamation plaintiff discovery on defendant's editorial process). In any event, even if the webpages were considered and credited, the individuals described there could still be agents of Elsevier. *See Holcomb*, 358 N.C. at 509.

---

[2] The Motion suggests that the Complaint cites Elsevier's website at ¶¶ 8, 61-63, but these paragraphs do not correspond to website references the First Amended Complaint.

### 4. The First Amendment's Actual Malice Standard Provides No Basis to Dismiss the Complaint

Finally, Elsevier makes a last-ditch effort to argue that the Court should dismiss the Complaint for a failure to allege "actual malice" by Elsevier. Motion pp. 25-23. Only where alleged defamation concerns a public official or public figure may a plaintiff be required to prove that false and defamatory speech was made with "actual malice." *New York Times Co. v. Sullivan*. 376 U.S. 254, 279-80 (1964); *see Gertz*, 418 U.S. at 342. But a defamation defendant's claim to protection from the First Amendment's "actual malice" standard is an affirmative defense. It provides no basis to dismiss the Complaint at this stage because a plaintiff need not preemptively plead facts in response to a potential affirmative defense.

#### a. GPS is not required to plead and prove that Elsevier acted with "actual malice."

Most fundamentally, Elsevier errs in contending that GPS must plead a sufficient basis to conclude that it acted with actual malice. In a defamation case, the defendant who seeks to take advantage of the actual malice standard bears the "burden of proving that the plaintiff is a public figure." *Foretich v. Capital Cities/ABC, Inc.,* 37 F.3d 1541, 1553 (1994); *see Mathis*, 205 N.C. App. at 201; *see Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (a 12(b)(6) motion "tests the sufficiency of the complaint, [and] generally cannot reach the merits of an affirmative defense"). Elsevier asserts that GPS qualifies as a limited-purpose public figure, but the Complaint does not support that conclusion and Elsevier's attempt to rely on materials outside the Complaint to satisfy its burden is both inappropriate and unpersuasive.

Supreme Court and Fourth Circuit precedent establishes three types of public figures who are required to prove actual malice; the only type plausibly relevant here are limited-purpose public figures who voluntarily inject themselves into a particular public controversy and thereby become public figures for a limited range of issues. *See Gertz*, 418 U.S. at 345; *Wells v. Liddy,* 186 F.3d

505, 532 (4th Cir. 1999). The Fourth Circuit has articulated a two-part test to determine whether an otherwise private person is a limited-purpose public figure: (1) whether a particular public controversy gave rise to the alleged defamation; and if so, (2) whether the nature and extent of plaintiff's participation in that controversy was sufficient to justify public figure status. *Foretich,* 37 F.3d at 1552-53. The Complaint does not come close to making sufficient allegations to meet either part of that highly specific fact-bound test.

*First*, Elsevier fails to establish that any public controversy gave rise to the alleged defamation. Not every conceivable issue of interest to the public qualifies as a "public controversy" warranting "actual malice." *Waldbaum v. Fairchild* Publications, 627 F.2d 1287 (D.C. Cir. 1980) ("A general concern or interest will not suffice."). The public controversy must be "a real dispute" the outcome of which appreciably "affects the general public in some way." *Id.* at 1296. A dispute does not become a public controversy simply by attracting attention—the controversy must be one that "was being debated publicly" and it must have "received public attention because its ramifications will be felt by persons who are not direct participants." *Id.* Elsevier asserts that GPS is a limited purpose public figure for purposes of all controversies concerning "the quality of its own technology." Motion p. 16. But that is a nonstarter. While there may exist some general interest in air purification technology in the abstract, Elsevier has not shown any preexisting widespread public dispute about the quality of GPS's technology. GPS thus cannot have "thrust[ ] [it]self into the forefront of" a non-existent public debate. *Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001).

Elsevier's introduction of 80 pages of extrinsic newspaper articles and similar materials outside the Complaint is no help to their cause. Docs. 47-2 to 47-13. Elsevier contends these materials show "air purification as a Covid-19 prevention technique was a matter of widespread

17

public discussion and concern." Motion p. 17. As an initial matter, the Court should not consider these extrinsic materials. At the motion-to-dismiss stage, a court is generally limited to the well-pled facts in the Complaint and can rely on extrinsic materials only "[u]nder narrow circumstances" that are not present here. *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Opp. to Mot. for Judicial Notice. But even if the Court concludes that some consideration is appropriate, they do not satisfy Elsevier's burden.

In its proffer of extrinsic documents, Elsevier includes only two January 2021 news stories that question GPS's technology—these stories were published after the Article was submitted to Elsevier but before it was accepted for publication. Docs. 47-12, 47-13. The Court should not credit those two articles as demonstrating that a legitimate preexisting public controversy arose just before the Article was published. The Complaint alleges that while conducting the study underlying the Article in late 2020, one of its authors contacted at least one reporter to generate publicity for the Article, and that the contacted reporter agreed to do a story before the results of the study were even completed. FAC ¶ 11. Read in context with those allegations, the two January 2021 news stories questioning GPS's technology may be evidence only of the same defamatory campaign, not a legitimate preexisting public controversy about the quality of GPS's technology. *See Hutchinson v. Proxmire*, 443 U.S. 111, 113 (1979) (defendants "charged with alleged defamation cannot, by their own conduct, create their own defense by making the claimant a public figure"); *Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6, 14 (1st Cir. 2011) (discussing the bootstrapping problem of parties liable for defamation manufacturing a public controversy to make the claimant into a public figure); *see also Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[W]hen a court considers relevant facts from the public record at the pleading

stage, the court must construe such facts in the light most favorable to the plaintiffs."). Such a manufactured controversy cannot justify the very defamation that created it.

To be sure, Elsevier at times also appears to rely on the public controversy and widespread public concern about the COVID-19 pandemic. *See* Motion p. 17. COVID-19 itself was of course a matter of public concern in February 2021. But Elsevier fails to show that any public debate surrounding the pandemic "g[a]ve rise to the alleged defamation." *Foretich,* 37 F.3d at 1552. To the contrary, the Article recognizes the public discourse on COVID-19 and then *expressly rejects that it is part of that discourse. See* Doc. 39-1 at 3 ("We did not assess efficacy in inactivating microbes or pathogens"), at 13 ("[W]e did not evaluate efficacy for microbial constituents, despite the high level of interest in these types of technologies for inactivating opportunistic pathogens such as SARS-CoV-2."). The stated focus of the Article was to "evaluate the gas and particle removal effectiveness and potential for byproduct formation" of GPS's technology, Doc. 39-1 at 3, not the prevention of COVID-19.

*Second*, even if Elsevier could establish a relevant public controversy, it still fails to establish that the nature and extent of GPS's participation in any such controversy was sufficient to justify qualifying GPS as a public figure in that debate. Motion p. 16. In the Fourth Circuit, courts weigh five factors to determine whether public figure status is justified based on the nature and extent of the plaintiff's participation in that controversy—namely, whether (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation.

*See Foretich,* 37 F.3d at 1553.  Neither the Complaint nor Elsevier's proffer of extrinsic materials demonstrates GPS's public-figure status under those factors.

Elsevier does not dispute that GPS is a privately held business that is not a mainstay in the media.  Elsevier does not even allege that GPS sells its products directly to consumers either online or in retail establishments.  And although GPS employees have participated in certain industry events and have spoken to its customers in various fora, Elsevier does not allege or demonstrate that GPS has access to radio, mainstream media, or other vehicles to routinely reach wide audiences.  Elsevier observes that the Complaint alleges that GPS is a "leader in the air quality/purification industry," is "trusted by some of the world's leading companies," and employs individuals who regularly speak at meetings of the American Society of Heating, Refrigerating, and Air-Conditioning Engineers.  Motion p. 16.  But those contentions fall far short of justifying public-figure status on any public controversy.

The extrinsic materials Elsevier offers are no more helpful to its arguments.  Elsevier's news stories and press releases are either irrelevant to any public dispute, *see* Docs. 47-2 to 47-11, or unsuitable for judicial notice because it is questionable whether they show a legitimate public controversy at the time.  *See* Docs. 47-12, 47-13; *see also* Opp. to Mot. for Judicial Notice.  And more the point, none demonstrates that GPS thrust itself into any public controversy.  The mere fact that GPS's products are effective in protecting against an array of airborne pathogens and are marketed for that purpose does not amount to "voluntarily assum[ing] a role of prominence" in any controversy or attempting to "influence the outcome of [any] controversy."  *Foretich,* 37 F.3d at 1553.

For its contrary assertion, Elsevier relies heavily upon the Third Circuit's decision in *Steaks Unlimited v. Deaner*, 623 F.2d 264 (3d. Cir. 1980).  But *Steaks* has little bearing here.  In that case,

the Third Circuit concluded, at summary judgment, that the plaintiff's "widespread advertising campaign," which included "radio and newspaper advertisements, large signs erected at sales locations, and the distribution of handbills to persons walking near the . . . store," rendered it a public figure for purposes of the quality of its products. Even accepting that such an advertising campaign could render a private company public for purposes of the First Amendment, Elsevier has not established that GPS engaged in a similar public advertisement campaign here. Press releases about the installation of GPS's products in various businesses and positive articles written *about* GPS—not *by* GPS—hardly show GPS "thrust[ing]" itself "to the forefront" of a controversy over how to respond to the pandemic. *Gertz*, 418 U.S. at 346.

Moreover, the precedential value of *Steaks* has since been undermined even in the Third Circuit. In *United States Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, the Third Circuit subsequently found that "an advertising campaign by a large corporation does not qualify it as a limited purpose public figure." 898 F.2d 914, 938-39 (3d. Cir. 1990). Even if "some of the advertisements touch[ed] on matters of public concern," the court recognized that "their central thrust [wa]s commercial." *Id.* at 939. The advertisers "acted primarily to generate revenue by influencing customers, not to resolve 'the issues involved,'" as *Gertz* requires. *Id.*; *see also Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 589 (1st Cir. 1980) (refusing to "deem[] all corporations that sell products public figures" for purposes of "allegedly defamatory statements made about the quality of their products"); *Next Techs. Inc. v. Beyond the Off. Door, LLC*, 992 F.3d 589, 590 (7th Cir. 2021) (observing "neither the Supreme Court nor any other court of appeals has endorsed th[e] approach" of *Steaks*). So it is here. Because GPS is not a public figure of any sort, the actual malice standard does not apply.

### b.    The Complaint adequately alleges actual malice

Finally, even if the actual malice standard applied, the Complaint adequately alleges that Elsevier published the Article with "actual malice."  A "defamatory falsehood" is made with "actual malice," within the meaning of *Sullivan* and *Gertz*, if it was "made with knowledge of its falsity or with reckless disregard for the truth."  *Gertz*, 418 U.S. at 342.  While that standard is demanding, it "is not an impenetrable shield for the benefit of those who engage in false speech." *Boyce & Isley*, 568 S.E.2d 893; *see, e.g.*, *Desmond v. News & Observer Publ'g Co.*, 846 S.E.2d 647, 660-75 (N.C. 2020).  "Although failure to investigate will not alone support a finding of actual malice," "recklessness may be found where there are obvious reasons to doubt the veracity" of an author's claims.  *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 688, 692.

Here, the Complaint alleges that Elsevier published the Article with "actual malice."  FAC ¶ 158.  For many of the same reasons that the Complaint plausibly alleges Elsevier's negligence, the allegation of actual malice is also sufficiently plausible to survive a motion to dismiss.  Among other things, the allegation is amply supported by factual allegations that Elsevier's peer review process was deeply flawed, *id.* ¶¶ 101, *et seq.*, and the obvious flaws and misrepresentations in the study that Elsevier must have either known of or willfully avoided before publication.  Even after GPS informed Elsevier of the Article's flaws and the authors' biases and financial conflicts, Elsevier refused to retract the Article or take any other corrective action.  *Id.* ¶¶ 1, 3, 22, 25, 29-30; *see Golden Bear Distributing Systems v. Chase Revel, Inc.*, 708 F.2d 944 (5th Cir. 1983) (a publisher's refusal to retract a statement after it is demonstrated to the publisher that the statement is false and defamatory can be relevant to the publisher's recklessness at the time the statement was published).  Then, shockingly, Elsevier published another article that bolstered the false conclusions of the Article after it was on notice of the falsity of the Article, and indeed *after* this lawsuit was filed.  That is enough to survive dismissal.

**B.      GPS States A Claim Under the UDTPA Against Defendants**

GPS has also adequately pled a claim against Elsevier under the UDPTA.  N.C. Gen. Stat. § 75-1.1(a) declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  N.C. Gen. Stat. § 75-16 provides a right of action to any person injured "by reason of any act or thing done . . . in violation of [Chapter 75]" to recover treble damages from the violator.  To recover on a claim of unfair and deceptive trade practices under North Carolina law, a plaintiff must establish: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused injury to the claimant." *Craven v. Cope*, 656 S.E.2d 729, 733 (N.C. Ct. App. 2008); *see* N.C. Gen. State. §§ 75-1.1, 16.  "[A] libel per se of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of [Section 75-1.1], which will justify an award of damages . . . for injuries proximately caused." *Boyce & Isley, PLLC*, 568 S.E.2d at 902 (quoting *Ellis v. Northern Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990)).

Elsevier's does not challenge GPS's allegations of any element of a UDTPA claim. Elsevier instead argues that GPS, as a business, may assert a claim under Section 75-1.1 only where "1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, 2) the businesses are competitors, or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public."  Motion p. 24 (quoting *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1020 (E.D.N.C. 2015)).  *Exclaim* addressed, outside the context of a defamation claim, when a business could show that a defendant's conduct was "in or affecting commerce."  *See* 134 F. Supp. 3d at 1020.  But the North Carolina Supreme Court has clearly held that, with qualifications not relevant here, "libel *per se* in a business setting is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1."  *Ellis*, 388 S.E.2d at 131; *see id.* (explaining that "certain transactions already subject

to pervasive and intricate statutory regulation, such as securities transactions, were not intended by the legislature to be included within the scope of the statute).  Because GPS has sufficiently pled that it was injured on the basis of Elsevier's libel *per se*, it has stated a claim for unfair and deceptive trade practices.

In any event, GPS's allegations meet the *Exclaim* standard.  GPS's allegations establish that Elsevier's "conduct giving rise to the cause of action has a negative effect on the consuming public."  134 F. Supp. 3d at 1020.  Elsevier "disparaged a technology that is effective at helping to reduce" an array of airborne pathogens, including "the airborne virus that causes COVID-19 in indoor environments."  FAC ¶ 4; *see id.* ¶¶ 53, 69, 130.  GPS's allegations establish that Elsevier's conduct led to "[s]ome buildings turn[ing] off GPS's devices that had been previously installed," *Id.* ¶ 132, as well as reduced uptake of GPS's technology.  *See, e.g.*, *id.* ¶¶ 134-35.  Due to Elsevier's conduct, members of the consuming public in schools, workplaces, restaurants, and other locations previously protected by GPS technology, were and are deprived of a proven method of pathogen reduction.  *See* FAC ¶ 132.  This is "a negative effect on the consuming public." *Exclaim Mktg.*, 134 F. Supp. 3d at 1020.  GPS has thus sufficiently stated a UDTPA claim even if *Exclaim* applies.

## IV.    CONCLUSION

For the foregoing reasons, GPS respectfully requests the denial of the Motion, and for all other relief, under law and equity, to which GPS may be justly entitled.

Dated: July 28, 2023                                       MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP

By: /s/ *Robert A. Muckenfuss*____
      Robert A. Muckenfuss (SBN #28218)
      Kelly Warlich (SBN #51053)
      201 North Tryon Street, Suite 3000
      Charlotte, NC 28202
      Tel: 704.343.2052
      Fax: 704.444.8707
      rmuckenfuss@mcguirewoods.com
      kwarlich@mcguirewoods.com

      Elizabeth Z. Timmermans (SBN #40205)
      Jonathan Ellis (SBN #41220)
      Armina Manning (SBN #60436)
      501 Fayetteville Street, Suite 500
      Raleigh, NC 27601
      Tel: (919) 755-6600
      Fax: (919) 755-6699
      eztimmermans@mcguirewoods.com
      jellis@mcguirewoods.com
      aamanning@mcguirewoods.com

      *Attorneys for Plaintiff Global Plasma*
      *Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this **28th day of July, 2023**, the foregoing **GLOBAL PLASMA SOLUTIONS, INC.'S OPPOSITION TO ELSEVIER INC. AND ELSEVIER LTD.'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** was filed electronically with the Clerk of Court for the Western District of North Carolina by using the CM/ECF system.  Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

/s/*Robert A. Muckenfuss*
Robert A. Muckenfuss
