## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO.  3:22-CV-034-RJC-DCK

| | | |
|---|---|---|
| **GLOBAL PLASMA SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **ELSEVIER INC., and ELSEVIER LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

   **THIS MATTER IS BEFORE THE COURT** on the "Motion Of Defendant Elsevier Ltd. To Dismiss Plaintiff's First Amended Complaint For Lack Of Personal Jurisdiction" (Document No. 42), the "Motion Of Defendants Elsevier Inc. And Elsevier Ltd. To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim Upon Which Relief May Be Granted" (Document No. 47), Defendants' "Motion For Judicial Notice" (Document No. 49), and "Plaintiff's Motion For Leave To File Surreply To Elsevier Ltd.'s Reply In Support Of Its Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 69).  These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and are now ripe for disposition.  Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion to dismiss for lack of personal jurisdiction be <u>denied</u>;  that the motion to dismiss for failure to state a claim be <u>granted in part</u> and <u>denied in part</u>;  that the motion for judicial notice be <u>denied without prejudice</u>;  and that the motion for leave to file surreply be <u>denied</u> as moot.

# I. BACKGROUND

Plaintiff Global Plasma Solutions, Inc. ("Plaintiff" or "GPS") initiated this action with the filing of an "Original Complaint" ("Complaint") on January 26, 2022.  See (Document No. 1). Defendants filed the "Motion Of Defendant Elsevier Ltd. To Dismiss The Complaint For Lack Of Personal Jurisdiction" (Document No. 10) and the "Motion Of Defendants Elsevier Inc. And Elsevier Ltd. To Dismiss The Complaint For Failure To State A Claim Upon Which Relief May Be Granted" (Document No. 11) on April 15, 2022.  The Honorable David S. Cayer denied the motions to dismiss without prejudice on July 11, 2022, on account of granting the parties leave to conduct limited jurisdictional discovery regarding the personal jurisdiction issues raised.  See (Document No. 25).  On April 6, 2023, the case was reassigned to the undersigned as the referral magistrate judge.

Plaintiff filed its "First Amended Complaint" (Document No. 39) ("Amended Complaint") on June 5, 2023 against Defendants Elsevier Inc. and Elsevier Ltd. ("Defendants").  GPS provides its customers "in the air purification and quality industry" with products that use NPBI technology, "a patented technology that cleans the air by introducing positive and negative ions in the space via the airflow in the ventilation system."  (Document No. 39, p. 15).

GPS's lawsuit arises out of Defendants' publication of an article in a scientific journal in 2021 that Plaintiff contends is false and defamatory because "it falsely concluded that GPS's air cleaning technology is ineffective and produces harmful compounds."  Id. at p. 1.  Defendant Elsevier Inc. is incorporated in the United States, and Defendant Elsevier Ltd. is incorporated in the United Kingdom.  Id. at p. 13.  The Elsevier Defendants together comprise "the world's largest scientific publisher," and they published the study at issue, entitled, "Evaluating a commercially available in-duct bipolar ionization device for pollutant removal and potential byproduct

2

formation" in spring 2021, both online and in print in "the allegedly peer-reviewed journal *Building and Environment*." Id. at pp. 1, 3. According to the Amended Complaint, "Elsevier knowingly published this false and fabricated study about GPS's technology and expressly named GPS and its location in the published article." Id. at p. 1. The decision regarding whether "to name GPS and its product" was debated by the authors of the article, who "ultimately left the decision to Elsevier who chose to name GPS specifically and went even further to name the exact location of the company." Id. at p. 4.

GPS alleges that "[w]hile conducting the study in late 2020 but prior to publication, Stephens [the author] made a 'cold call' to a reporter at the New York Times seeking to gain publicity for" the study. Id. at p. 5. Before the first article's publication, "there had been no media attention around GPS or any suggestion that GPS's technology created harmful byproducts." Id. Despite GPS reaching out to Elsevier to request to retract the study, "Elsevier ignored GPS's communications," and this lawsuit followed. Id. at p. 1. Plaintiff contends that its losses exceed $1.8 billion as a result of the article's publication. Id.

Following publication of the initial study that GPS contends is defamatory, "Elsevier amazingly published a second study focused on the same GPS product in 2022…where the underlying data provide that the initial study was false and fabricated." Id. at p. 2. But, "Elsevier also [allegedly] buried the second study by creating a paywall and making it harder for readers to access," despite the initial study being available on an open access platform. Id. at pp. 2, 11. GPS details how the "author of the initial study, Brent Stephens, a professor at the Illinois Institute of Technology," had a predetermined agenda to try "to prove GPS's technology created harmful byproducts" because he partnered with an individual at one of GPS's competitors to attract customers away from GPS. Id. at pp. 5, 19.

3

Plaintiff's Amended Complaint brings two claims against Defendants: (1) for defamation; and (2) for unfair and deceptive trade practices. Id. at pp. 42-45. The "Motion Of Defendant Elsevier Ltd. To Dismiss Plaintiff's First Amended Complaint For Lack Of Personal Jurisdiction" (Document No. 42) and the "Motion Of Defendants Elsevier Inc. And Elsevier Ltd. To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim Upon Which Relief May Be Granted" (Document No. 47) were filed June 30, 2023. "Plaintiff Global Plasma Solutions, Inc.'s Response In Opposition To Elsevier Ltd.'s Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 53) and "Global Plasma Solutions, Inc.'s Opposition To Elsevier Inc. And Elsevier Ltd.'s Motion To Dismiss The First Amended Complaint For Failure To State A Claim" (Document No. 59) were filed July 28, 2023. The "Reply Memorandum Of Defendant Elsevier Ltd. In Support Of Its Motion To Dismiss The First Amended Complaint For Lack Of Personal Jurisdiction" (Document No. 64) was filed August 18, 2023, and the "Reply Memorandum Of Defendants Elsevier Inc. And Elsevier Ltd. In Support Of Their Motion To Dismiss The First Amended Complaint For Failure To State A Claim" (Document No. 67) was also filed August 18, 2023. Defendants' "Motion For Judicial Notice" (Document No. 49) was filed June 30, 2023. "Global Plasma Solutions, Inc.'s Opposition To Elsevier Inc. And Elsevier Ltd.'s Motion For Judicial Notice" (Document No. 60) was filed July 28, 2023. Defendants' "Reply In Support Of Motion For Judicial Notice" (Document No. 68) was filed August 18, 2023. "Plaintiff's Motion For Leave To File Surreply To Elsevier Ltd.'s Reply In Support Of Its Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 69) was filed August 25, 2023. "Defendant Elsevier Ltd.'s Response In Opposition To Plaintiff's Motion For Leave To File Surreply" (Document No. 73) was filed September 15, 2023. "Plaintiff Global Plasma Solutions, Inc.'s Reply Brief In Support Of Its Motion For Leave To File Surreply To Elsevier Ltd.'s Reply In

Support Of Its Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 74) was filed September 22, 2023.

The pending motions have been fully briefed and are ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

**Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(2)**

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Indus., Inc. v. Seim S.R.L., 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be

resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction are answered by a two-step analysis: (1) the Court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the Court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (internal quotations and citations omitted). Specific jurisdiction exists when a Court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

Due process precludes a Court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004)).

**Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

The undersigned will consider each of the motions in turn.

**1. Elsevier Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction and GPS's Motion for Leave to File Surreply**

Defendant Elsevier Ltd. moves to dismiss for lack of personal jurisdiction.  <u>See</u> (Document No. 42).  Elsevier Ltd. makes several arguments against the Court's exercise of personal jurisdiction against it.  First, Elsevier Ltd. contends that the Court does not have general jurisdiction over it.  <u>See</u> (Document No. 43, pp. 3-5).  Importantly, GPS does not seem to contest this argument in its response, and therefore, the Court will not address it, assuming that Elsevier Ltd. is not subject to general personal jurisdiction in this district.  <u>See</u> (Document No. 53).

The next argument that Elsevier Ltd. advances against the Court's exercise of personal jurisdiction against it is that it is not subject to specific jurisdiction in this district.  <u>See</u> (Document No. 43, pp. 5-18).  Elsevier Ltd. contends that it did not target North Carolina;  further, GPS cannot establish all prongs of the effects test laid out in <u>Calder v. Jones</u>, 465 U.S. 783 (1984).  <u>Id.</u> at pp. 6-7.  Specifically, Elsevier Ltd. argues that "the addition of 'Charlotte, NC USA' to the name of GPS and its model number was done by the authors not at Elsevier's suggestion, but at the suggestion of one of the independent peer reviewers of the Article."  <u>Id.</u> at p. 11.  Further, Elsevier Ltd. contends, "the Article was written by people who were under no control by Elsevier, then subjected to an editorial process involving an editor and peer reviewers who were under no control by Elsevier, which process culminated in that editor, Professor Blocken, approving the Article for publication at his own discretion."  <u>Id.</u> at p. 14.

Plaintiff GPS takes an entirely different approach to the personal jurisdiction hurdle.  GPS's primary argument is that Elsevier Ltd. is subject to personal jurisdiction in this Court based

on an alter ego theory of jurisdiction, such that "Elsevier Ltd. and Elsevier Inc. operate as a single business enterprise." (Document No. 53, p. 6). Since Elsevier Inc. "does not contest personal jurisdiction…this Court's personal jurisdiction over Elsevier Inc. extends to Elsevier Ltd." <u>Id.</u> GPS contends that Elsevier Inc. and Elsevier Ltd. are "indirect subsidiaries of RELX PLC." <u>Id.</u> at p. 11. The corporate structure is a complex web of holding companies, apparently, as RELX PLC owns RELX Group PLC, which owns RELX UK Ltd., which in turn owns Elsevier Ltd. <u>Id.</u> RELX Group PLC also owns RELX Overseas Holdings Ltd., which owns RELX US Holdings Inc., "which owns RELX Inc., which owns Elsevier STM Inc., which owns Elsevier Holdings Inc., which owns Elsevier Inc." <u>Id.</u> This "excessive fragmentation of the RELX organization into separate corporations supports the conclusion that" the two Elsevier Defendants "are mere alter egos." <u>Id.</u> at p. 12.

GPS cites other supporting factors which it contends supports its alter ego theory of personal jurisdiction over Elsevier Ltd. GPS argues that both Elsevier Inc. and Elsevier Ltd. hold themselves out as one entity known as "Elsevier." <u>Id.</u> Further, these entities have allegedly "defend[ed] and prosecute[d] lawsuits jointly as 'Elsevier.'" <u>Id.</u> at p. 13. Additionally, they have "substantial overlap in officers, directors, and employees" – GPS points to the example of Edward Cassar, the CFO of Elsevier Ltd., who also "performs services for Elsevier Inc. [and another subsidiary of RELX PLC]," since neither of these entities has its own CFO. <u>Id.</u> at pp. 13-14. Cassar is also a director of both entities. <u>Id.</u> Elsevier Ltd. and Elsevier Inc. "share one legal department." <u>Id.</u> at p. 17.

GPS advances an alternative argument in support of its theory that the Court has personal jurisdiction over Elsevier Ltd.: that the Court has specific personal jurisdiction over Elsevier Ltd. <u>Id.</u> at p. 21. This argument is premised on GPS's contention that "Elsevier Ltd. expressly aimed

its tortious conduct at North Carolina." Id. at p. 24. Furthermore, "Elsevier Ltd.'s business consists exclusively of publishing articles and other materials…[and i]n that context, [its] publication of a defamatory article exclusively focused on a North Carolina company and identifying its location in North Carolina constitutes the requisite targeting" of the state. Id. Furthermore, GPS argues that the senior editor, Professor Bert Blocken, of *Building and Environment*, the journal at issue in this case, was an employee of Elsevier Ltd. rather than an independent contractor. The argument proceeds as follows: since Blocken is argued to be an employee of Elsevier Ltd., GPS contends that his actions in approving "the decision made during the editorial process to identify GPS's location in Charlotte, North Carolina" are imputed to Elsevier Ltd., and therefore, Elsevier Ltd. is subject to specific personal jurisdiction in this Court for targeting the state. Id. at p. 30.

The undersigned is persuaded by Plaintiff's alter ego argument in favor of the exercise of personal jurisdiction over Elsevier Ltd. "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual…that would not ordinarily be subject to personal jurisdiction in that court when the individual…is an alter ego of a corporation that would be subject to personal jurisdiction" in the court analyzing the issue. Newport News Holding Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 433 (4th Cir. 2011) (internal quotations and citations omitted). In North Carolina, a party may be treated as the alter ego of another – and, therefore, the corporate veil may be pierced—where the following three elements are satisfied: "(1) [c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time *no separate mind, will or existence of its own*;" (2) "[s]uch control must have been used by the defendant to commit fraud

10

or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights;"[1] and (3) "[t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985).

Importantly, "[w]hen, as occurs here, a court makes a determination about jurisdiction only from legal memoranda, supporting affidavits and other documents, and allegations from the relevant complaint, a plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis to survive a jurisdictional challenge." Brown v. Adv. Digital Solutions, LLC, 2017 WL 3838640, at *3 (W.D.N.C. Sept. 1, 2017). "[T]he test for alter ego for jurisdictional purposes is generally recognized to be somewhat less stringent than that necessary to impose liability." Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 687 (M.D.N.C. 2011). The alter ego theory of personal jurisdiction should be applied "flexibly to avoid injustice," and therefore, "the presence or absence of a particular factor" is not dispositive. Hayward Indus., Inc. v. Ningbo C.F. Elec. Tech Co., Ltd., 2021 WL 2187953, at *6 (W.D.N.C. May 28, 2021).

"While the doctrine is frequently applied in the parent/subsidiary context, it has also been applied where the affiliates share common ownership." Pan-Am. Prods. & Holdings, LLC, 825 F. Supp. 2d at 687. "[O]ne important factor courts generally consider when evaluating jurisdiction under an alter ego theory is whether the defendants alleged to be alter egos share the same counsel." Hayward Indus., Inc., 2021 WL 2187953, at *7. "Non-compliance with corporate formalities" and "[e]xcessive fragmentation of a single enterprise into separate corporations" are other factors that

---

[1] Defendant Elsevier Ltd. conclusorily argues that defamation does not fall within the second prong of the Glenn test with respect to the harm alleged. See (Document No. 64, p. 3) (citing 329 S.E.2d at 330). The undersigned finds it difficult to see how defamation or violation of the UDTPA would *not* be covered by the broad language of Glenn's second prong, which covers "fraud or wrong, [perpetration of] the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights." 329 S.E.2d at 330.

courts look to (among others) in deciding whether to consider permitting piercing of the corporate veil. <u>Glenn</u>, 329 S.E.2d at 330-31.

Here, on balance, and especially considering the governing standard, the undersigned finds that the factors weigh in favor of finding that alter ego jurisdiction does exist over Elsevier Ltd. Significantly, the undersigned finds that the standard governing the analysis is whether Plaintiff has made a *prima facie* showing that personal jurisdiction exists in this Court over Elsevier Ltd. – a low bar to pass. <u>See</u> <u>Brown</u>, 2017 WL 3838640, at *3. Furthermore, the alter ego doctrine is applied flexibly. <u>Hayward Indus., Inc.</u>, 2021 WL 2187953, at *6. According to the exhibits that GPS summarizes in its response to Defendant Elsevier Ltd.'s motion, RELX PLC is the parent company of both Elsevier Inc. and Elsevier Ltd. (which, in turn are owned by various other subsidiaries of RELX PLC, in a complex tree of ownership, as described in the preceding paragraphs). <u>See</u> (Document No. 53, p. 11). This kind of "excessive fragmentation" of a corporation counsels in favor of piercing the corporate veil. <u>See</u> <u>Glenn</u>, 329 S.E.2d at 330-31. Furthermore, both Elsevier Inc. and Elsevier Ltd. "share one legal department," and, in this case, they are represented by the same counsel. (Document No. 53, pp. 17-18). Similarly, GPS indicates that there is one individual who functions as the CFO for Elsevier Ltd., and that same individual (though not formally designated as the CFO for Elsevier Inc.) also "executes documents on behalf of Elsevier Inc.," given Elsevier Inc.'s lack of a formal CFO. <u>Id.</u> at p. 14. This sort of "overlap" is convincing evidence that these affiliates do not adhere to corporate formalities. <u>See</u> <u>Glenn</u>, 329 S.E.2d at 330-31. Furthermore, "Elsevier entities enter into a single contract with each customer that bundles all the customer's subscriptions to Elsevier products, regardless of which Elsevier entity purportedly owns and publishes the subscription content." (Document No. 53, p. 15). Over the time period spanning 2018 to 2022, "Elsevier billed over 7,000 invoices to North Carolina

customers," 5,000 of which Elsevier (collectively, the various Elsevier subsidiaries) could not determine from which specific Elsevier subsidiary they were billed. Id. Indeed, Elsevier Inc. and Elsevier Ltd. (and another Elsevier subsidiary) "share a centralized accounts payable and accounts receivable system." Id.

The above evidence that GPS includes in its response opposing Elsevier Ltd.'s motion to dismiss is persuasive, and indeed, convincing to the undersigned that Elsevier Ltd. is an alter ego of Elsevier Inc. Since Elsevier Inc. is subject to general personal jurisdiction in this district as a company registered to do business in North Carolina, under the alter ego theory of personal jurisdiction, the undersigned finds that Elsevier Ltd.'s motion to dismiss should be denied. See (Document No. 39, p. 14); Newport News Holding Corp., 650 F.3d at 433.

### 2. Defendants' Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)

Defendants argue that Plaintiff's Amended Complaint should be dismissed for failure to state a claim for a number of reasons. The undersigned will examine each of these arguments in turn.

First, Elsevier Inc. contends that "Elsevier Ltd. is the publisher of the Article, not Elsevier Inc.," and therefore, the claims against it must be dismissed. (Document No. 48, p. 5). Elsevier Inc. contends that it cannot be held liable because it did not publish the article at issue, and GPS cannot "pierc[e] the corporate veil." Id. Plaintiff, on the other hand, argues that "Elsevier Inc. is [Elsevier Ltd.'s] U.S. affiliate," and the Amended Complaint specifically mentions that both Defendants were "involved in the publishing of the defamatory Article." (Document No. 59, p. 11) (citing Document No. 39, p. 42). Respectfully, the undersigned agrees with Plaintiff – "it is at least *plausible* [at this early stage of the litigation] that the domestic Elsevier entity participated in the publication of an article under its corporate name, targeting North Carolina residents,

concerning a scientific study conducted on the technology of a North Carolina company…where it was registered to do business." (Document No. 59, pp. 11-12). Furthermore, as the undersigned has concluded with respect to the question of personal jurisdiction over Elsevier Ltd., Plaintiff includes sufficient allegations in the Amended Complaint such that the Court has alter ego jurisdiction over Elsevier Ltd. See supra pp. 7-13. Therefore, whether Elsevier Inc. is a proper defendant is a factual question best reserved for a later stage of the litigation after discovery has been conducted. At this point, sufficient allegations have been made against Elsevier Inc. (as the alter ego of Elsevier Ltd.) such that the claims against it should not be categorically dismissed.

### 1. Defamation Claim

Defendants do not seem to contest that Plaintiff has adequately stated a defamation claim under North Carolina common law. Therefore, the undersigned will not analyze the elements of a common-law defamation claim, assuming that they have been satisfied here. See (Document No. 59, p. 10) (citing Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 897 (N.C. Ct. App. 2002) ("a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person")). What Defendants do argue, however, in support of the argument that the Amended Complaint fails to state a defamation claim against them, is that the Amended Complaint fails to allege the requisite level of fault. See (Document No. 48, p. 5). Defendants also argue that they cannot be directly liable for the contents of the article because GPS fails to allege "that Elsevier had any actual knowledge of the contents of the Article before it appeared." Id. at p. 7. Furthermore, Defendants contend that the Amended Complaint "[f]ails to [p]lead [f]acts that [w]ould [m]ake Elsevier [d]irectly [l]iable." (Document No. 48, p. 7). The undersigned will examine these arguments below.

14

"The application of the state law of defamation is limited…by the First Amendment to the Constitution of the United States." Leask v. Robertson, 589 F. Supp. 3d 506, 518 (D.S.C. 2022) (quoting CACI Premier Tech., Inc. v. Rhodes, 536 F.3d 280, 293 (4th Cir. 2008) (internal citations and quotations omitted)). "[T]wo forces…reshape the common-law landscape [of defamation] to conform to the First Amendment." Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775 (1986). "The first is whether the plaintiff is a public official or figure, or is instead a private figure," and the second "is whether the speech at issue is of public concern." Id. When the case involves either a plaintiff that is a public figure or the alleged defamatory material touches upon an issue of public concern, there is a higher level of fault that the plaintiff must prove. When the plaintiff is a public figure, the actual malice standard applies: that is, "[t]hose who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures…may recover…only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth. Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974). And, when the defamatory material involves an issue of public concern, even if the plaintiff is a private party, actual malice must also be proven. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 751 (1985) (citing Gertz, 418 U.S. at 323).

In this case, Defendants argue that Plaintiff is *both* a limited purpose public figure (and, therefore, Plaintiff must prove actual malice, which Defendants argue it has not) and that the "subject matter of the Article was a matter of public concern." (Document No. 48, pp. 15-16); (Document No. 67, p. 4). The undersigned finds that at this point, "it is premature to consider whether [Plaintiff] is a limited-purpose public figure," since "that determination requires further factual development." Reger v. The Associated Press, 2024 WL 1657724, at *3 (D. Minn. April

15

17, 2024); see also Goldfarb v. Kalodimos, 539 F. Supp. 3d 435, 455 (E.D. Pa. May 14, 2021). Defendants contend that Plaintiff became a limited purpose public figure because it "made a concerted effort to establish itself as a trustworthy authority on issues of air quality and air purification" during the Covid-19 pandemic. (Document No. 48, p. 16). They highlight articles that they contend show that "GPS' technology [] became the subject of public debate." Id. at p. 21.

The undersigned finds that the "introduction of [these] extrinsic newspaper articles and similar materials outside the Complaint" is indication that it is simply too early in this litigation to decide whether Plaintiff is a limited purpose public figure, and whether the quality of GPS's technology was an issue of public concern. (Document No. 59, p. 23). The applicable standards for determination of whether a party is a limited-purpose public figure or whether an issue is one of public concern simply require too much reference to fact-specific inquiries inappropriate at this early stage, without both sides having benefited from robust exchange of discovery. See Fitzgerald v. Penthouse Int'l, Ltd., 691 F.2d 666, 668 (4th Cir. 1982) (citing factors that aid a court in the determination of whether a plaintiff is a limited purpose public figure: "(1) the plaintiff had access to channels of effective communication;" "(2) the plaintiff voluntarily assumed a role of special prominence in a public controversy;" "(3) the plaintiff sought to influence the resolution or outcome of the controversy;" "(4) the controversy existed prior to the publication of the defamatory statements;" and "(5) the plaintiff retained public figure status at the time of the alleged defamation"). Whether "speech addresses a matter of public concern must be determined by [the expression's] content, form, and context…as revealed by the whole record." Dun & Bradstreet, Inc., 472 U.S. at 761 (internal citations and quotations omitted).

Even if Plaintiff were ultimately determined to be a limited-purpose public figure or the contents of the article were deemed an issue of public concern, the Amended Complaint plausibly alleges actual malice. This conclusion also negates Defendant's argument that the Amended "Complaint cannot be read to allege plausibly that Elsevier had direct knowledge of the contents of the Article." (Document No. 48, p. 10). Defendant points to an email string from the authors that it contends shows that they, not Defendants, "decided to go ahead and name" "GPS and the specific model number of its ionizer." Id. at p. 9. Plaintiff correctly points out that "[w]ho made or contributed to the ultimate decision" about naming GPS in the article "is a question that should be left until after GPS has an opportunity to obtain discovery about the communications." (Document No. 59, p. 19). These emails are evidence that might be appropriate for the Court to consider at summary judgment – and could ultimately prove invaluable to Defendants' argument – but not at this early stage, without the benefit of full and robust discovery.

The Amended Complaint clearly alleges that "[t]he authors ultimately left the decision to Elsevier who chose to name GPS specifically." (Document No. 39, p. 4). Further, Plaintiff alleges that "Elsevier knew that" the statement that "GPS's device 'led to an increase' in certain VOCS…was false or purposefully avoided its falsity and chose to publish the First Study anyway." Id. at p. 22. Plaintiff further alleges that "Elsevier knew there were multiple test results which yielded different results and showed no increase in byproducts but published the First Study omitting these contradictory results." Id. at p. 29. Given that the definition of "actual malice" as defined in New York Times Co. v. Sullivan, 376 U.S. 254 (1964) is whether there was "knowledge of falsity or reckless disregard for the truth," the undersigned finds that actual malice has been plausibly alleged in the Amended Complaint. Dun & Bradstreet, Inc., 472 U.S. at 754 (citing New York Times Co., 376 U.S. at 254). Again, although the undersigned makes no determination at

17

this point about whether Plaintiff is a limited purpose public figure or whether the contents of the alleged defamatory article touched upon an issue of public concern, even if those determinations were made, actual malice has been plausibly alleged. And, "at the pleading stage," the undersigned is satisfied that this is sufficient because "it is not the district court's province [on a motion to dismiss] to dismiss a plausible complaint because it is not as plausible as the defendant's theory." Palin v. New York Times Co., 940 F.3d 804, 815 (2d Cir. 2019).

For all of the reasons analyzed above, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's defamation claim be denied.[2]

## 2. UDTPA Claim

With respect to the UDTPA claim, Defendants argue that it must be dismissed because "[i]t is plain on the face of the Complaint that Elsevier and GPS are not engaged in any commercial dealings and are not competitors." (Document No. 48, p. 23). The undersigned finds this argument dispositive. "North Carolina's [UDTPA] prohibits '[u]nfair methods of competition' and 'unfair or deceptive acts or practices' that are 'in or affecting commerce.'" Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 519 (4th Cir. 1999) (citing N.C. Gen. Stat. §75-1.1(a)). "Although the [UDTPA's] language is quite broad, 'the Act is not intended to apply to all wrongs in a business setting." Food Lion, Inc., 194 F.3d at 519 (quoting HAJMM Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 492 (N.C. 1991)). "The Act's primary purpose is to protect the consuming public," and therefore, "consumers aggrieved by unfair or deceptive business practices" have a private cause of action. Food Lion, Inc., 194 F.3d at 519. Businesses, too, though, "are sometimes allowed to assert [UDTPA] claims against other businesses," but only "when the businesses are

---

[2] Defendants make an argument that GPS's defamation claim related to the Second Study is barred by the statute of limitations. See (Document No. 48, p. 15). Plaintiff does not seem to respond to this argument. The undersigned reviewed Plaintiff's Amended Complaint, and it appears that the basis for the defamation claim is the First Study. Therefore, the undersigned will not address Defendants' argument on this point.

18

competitors (or potential competitors) or are engaged in commercial dealings with each other."
Id. at 520.

Here, GPS and the Elsevier Defendants – an air purification technology manufacturer and academic journal publishers – are clearly not competitors.  Nor are they engaged in commercial dealings with one another.  "[N]o North Carolina court has recognized a UDTPA claim in the context of a newspaper report about a business with which it does not compete."  EEE ZZZ Lay Drain Co., Inc. v. Lakeland Ledger Pub. Corp., 2000 WL 33422618, at *4 (W.D.N.C. Feb. 8, 2000).  The undersigned will therefore respectfully recommend that Plaintiff's UDTPA claim be dismissed.

### 3.  Motion for Judicial Notice

As referenced above, Defendants "seek judicial notice of Exhibits B through M attached to its motion to dismiss."  (Document No. 49-1, p. 3).  Plaintiff contends that this is a request "to take judicial notice of 80 pages of articles and press releases about GPS's technology for the purposes of resolving Elsevier's motion to dismiss."  (Document No. 60, p. 1).  "In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record…[,] documents attached to the complaint…as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  Phillips v. Pitt Cty. Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  Here, these documents are not integral to the Amended Complaint, and the undersigned has stated that it will not resolve the fact-intensive question, at this stage, about whether GPS qualifies as a limited-purpose public figure.  See supra p. 16.  For this reason, the undersigned respectfully recommends that Defendants' motion for judicial notice be denied without prejudice.  At a later stage of the litigation, following discovery, these materials could be

resubmitted, when it is appropriate to determine whether Plaintiff is a limited purpose public figure.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "Motion Of Defendant Elsevier Ltd. To Dismiss Plaintiff's First Amended Complaint For Lack Of Personal Jurisdiction" (Document No. 42) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that "Plaintiff's Motion For Leave To File Surreply To Elsevier Ltd.'s Reply In Support Of Its Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 69) be **DENIED as moot**.

**IT IS FURTHER RECOMMENDED** that Defendants' "Motion Of Defendants Elsevier Inc. And Elsevier Ltd. To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim Upon Which Relief May Be Granted" (Document No. 47) be **GRANTED in part** as to the UDTPA claim, and **DENIED in part** as to the defamation claim.

**IT IS FURTHER RECOMMENDED** that Defendants' "Motion For Judicial Notice" (Document No. 49) be **DENIED without prejudice**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v.

<u>Benton</u>, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  <u>Id.</u>  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: May 21, 2024

David C. Keesler
United States Magistrate Judge