UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

GLOBAL PLASMA SOLUTIONS, INC.

*Plaintiff,*

v.

ELSEVIER INC. and ELSEVIER LTD.,

*Defendants.*

Case No. 3:22-cv-00034-MR-DCK

**MEMORANDUM IN SUPPORT OF ELSEVIER LTD.'S MOTION
FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

Defendant Elsevier Ltd. respectfully submits this Memorandum in support of its motion requesting that the Court certify for interlocutory appeal the denial of Elsevier Ltd.'s motion to dismiss the First Amended Complaint for lack of personal jurisdiction (Doc. 42). Certification will enable the Fourth Circuit Court of Appeals to resolve a legal issue on which the courts of this District are divided, and will speed the resolution of this action.

PROCEDURAL HISTORY

Elsevier Ltd., a corporation organized and headquartered in the United Kingdom, brought a motion to dismiss the First Amended Complaint (the "Complaint") under FRCP 12(b)(2) for lack of personal jurisdiction (Doc. 42). After

that motion – and a motion by both defendants for dismissal under Rule 12(b)(6) – had been fully briefed by both sides, Magistrate Judge Keesler filed a Memorandum and Recommendation ("M&R") (Doc. 75) on May 22, 2024. On the issue of jurisdiction, the M&R noted that GPS had advanced two theories of jurisdiction: specific jurisdiction and alter ego jurisdiction. However, the M&R adopted only the alter ego jurisdiction allegation. On that basis, the M&R recommended that Elsevier's 12(b)(2) motion should be denied.

All parties filed Objections to one or more portions of the M&R, but GPS did not note an objection to the M&R's rejection of its specific jurisdiction claim. Thus, the only basis for jurisdiction over Elsevier Ltd. in this case is alter ego jurisdiction.

The parties fully briefed their objections. On July 23, 2025, this Court issued an opinion upholding the M&R.

As required, Elsevier Ltd. filed its Answer (Doc. 104) to the Complaint on August 6, 2025. In the Introductory Statement of its Answer, Elsevier Ltd. indicated that it might well seek certification on or before August 29, 2025. The applicable statute, 28 U.S.C. § 1292(b), does not impose a deadline for filing a motion for certification, and the Fourth Circuit has not had occasion to give any guidance on the matter. District Courts in this Circuit have accepted such motions as late as two months after the filing of the original order, *Ohio Valley Envtl. Coal. v. Elk Run Coal Co.*, No. 3:12-0785, 2014 U.S. Dist. LEXIS 130123, at *11 (S.D. W. Va. Sept. 17,

2014), and thirty-nine days after filing of the order (and approximately three weeks after the movant advised the Court of its intent to file), *United States ex rel. Schnupp v. Blair Pharmacy*, No. ELH-17-2335, 2025 U.S. Dist. LEXIS 86750, at *54-55 (D. Md. May 7, 2025). Elsevier Ltd. has followed the more conservative example of *United States ex rel. Schnupp* in filing its motion thirty-seven days after the entry of the Court's order, and approximately three weeks after stating in its Answer that was considering such a motion.

## INTRODUCTORY STATEMENT

Denial of a motion to dismiss is an interlocutory order not subject to appeal as of right. But under 28 U.S.C. §1292(b), a District Court may certify such an order for appeal – and should do so if it finds the conditions of §1292(b) are met –subject to the ultimate discretion of the Court of Appeals. Elsevier asks that this Court certify for appeal the denial of Elsevier's 12(b)(2) motion.

Certification is appropriate when an interlocutory order "involves a controlling question of law," as to which there is "substantial ground for difference of opinion," if an immediate appeal from the order may "materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). Issues of personal jurisdiction fall within the scope of that statute. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997); *Young v. New Haven Advoc.*, 315 F.3d 256 (4th Cir. 2002). All three parts of the statutory test are met here.

The question of law here is whether, in determining if it can exercise personal jurisdiction over a foreign defendant on "alter ego" grounds, a court in North Carolina must apply the same standard as applies to the determination of alter ego liability. The M&R said the standard for jurisdiction is "less stringent" than that for liability, citing *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 687 (M.D.N.C. 2011), and this Court by adopting the M&R has also so found. Some federal courts in North Carolina have arrived at a similar place but without explicitly stating that the standard for jurisdiction is "less stringent." In stark contrast, state courts in North Carolina, and three other federal courts in North Carolina have taken the exactly opposite view.

Presumably because the Magistrate Judge viewed the standard as less stringent, the M&R did not address two of the three elements of the "instrumentality" rule that governs alter ego claims in North Carolina. As most recently explicated in *Glenn v. Wagner*, 313 N.C. 450 (1985), the three elements are:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

-4-
Case 3:22-cv-00034-MR-DCK     Document 108     Filed 08/29/25     Page 4 of 15

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at 455, *quoting B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966).

The M&R quoted the foregoing language from *Glenn*; *see* Doc. 75 at pp. 10-11. It then discussed the first element, control, at some length – *see* Doc. 75 at pp. 12-13 – finding that GPS had made a prima facie showing of "excessive fragmentation" and other indicia of control. However, the M&R made no finding as to whether GPS had made a prima facie showing that the control alleged to exist between Elsevier Ltd. and Elsevier Inc. was used by either of them to "commit fraud or wrong" (element 2 of the instrumentality rule) or whether the alleged corporate control "proximately caused" the injury alleged in the Complaint (element 3 of the instrumentality rule). In this the M&R was at odds with other cases holding that all three elements must be shown in order to establish alter ego jurisdiction.

The question of what test to apply to claims of alter ego jurisdiction is a "controlling" issue of law here because one of the defendants, Elsevier Ltd., would be dismissed if the Fourth Circuit Court of Appeals resolved the disagreement in favor of the courts that apply the same test for alter ego jurisdiction as for alter ego liability. Neither the Complaint nor GPS's filings on the question of jurisdiction addressed or made allegations about either of the remaining two alter ego requirements. Given this vacuum, dismissal of the case against Elsevier Ltd. would

be inevitable.

Removal of Elsevier Ltd. from this action would materially advance the ultimate termination of this litigation. Indeed, it could bring the case to a rapid end, because it would remove from the case the actual publisher of the article that is the focus of this case. GPS' remedy, assuming any wrong was committed, would then be to sue Elsevier Ltd. in a forum with jurisdiction.

## ARGUMENT

Elsevier Ltd. asks this Court to certify a single, discreet, and yet critical issue: its dismissal of Elsevier Ltd.'s 12(b)(2) motion. The governing statute, 28 U.S.C. 1292(b), authorizes a District Court to certify an order for interlocutory appeal if the order:

> involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation…

*In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019) (District Court has a duty to certify if it finds that the statutory criteria are met). All three parts of this test are met here.

### I. The Test for Alter Ego Jurisdiction under North Carolina Law is a Controlling Question of Law.

A controlling question of law is one "serious to the conduct of the litigation, either practically or legally." *In re Trump*, 928 F.3d at 371, *quoting Johnson v.*

*Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (internal citation omitted). As that statement necessarily implies, "serious" does mean dispositive of the litigation. *See Gilmore v. Jones*, No. 3:18-cv-00017, 2019 U.S. Dist. LEXIS 157329, at *8-9 (W.D. Va. Sept. 16, 2019), and cases cited therein. As the Court held in *Gilmore*:

> If … the Fourth Circuit should reverse this Court's decision on Defendants' Fed. R. Civ. P 12(b)(2) motion, that would likely result in the dismissal of all but one of the remaining Defendants. This is sufficient to constitute a "controlling" question for the purposes of §1292(b).

*Id.* at *9. Precisely the same situation applies here. If the Fourth Circuit should reverse this Court's decision by holding that the test for alter ego jurisdiction is *not* "less stringent" than the test for alter ego liability, and that the second and third elements of the "instrumentality" rule must be properly pled for jurisdiction to lie, dismissal of this case as to Elsevier Ltd. necessarily follows. Nothing in the Complaint, and no allegations in GPS's motion papers, make any claim that the alleged corporate domination was "used by" Elsevier Ltd. (or Elsevier Inc., for that matter) "to commit fraud or wrong" or that "[t]he aforesaid control and breach of duty … proximately cause[d] the injury or unjust loss complained of."

A question of law should be a "pure question of law" that "the court of appeals could decide quickly and cleanly without having the study the record." *Id.*, *quoting In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010). For that reason, Elsevier Ltd. does not ask the Court to certify its ruling that GPS has

satisfied, at least at this stage, the first element of "alter ego" jurisdiction, namely, corporate domination: that is to some degree a fact-based issue. The purely legal question here is whether the test for alter ego jurisdiction is or is not "less stringent" than the test for alter ego liability, and whether the other two elements of North Carolina's alter ego test - that "such control must have been used by the defendant to commit fraud or wrong" and that "[t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of" – apply to jurisdiction as much as they do to liability. This is a question that the Fourth Circuit can decide "quickly and cleanly."

## II. There is Substantial Difference of Opinion on the Question.

When courts within the same Circuit disagree on an issue, and the Circuit Court of Appeals has not weighed in on the issue, there is "substantial ground for difference of opinion" on the question of law to be certified. *Gilmore*, 2019 U.S. Dist. LEXIS 157329, at *16; *Hatch v. Demayo*, No. 1:16-cv-925, 2018 U.S. Dist. LEXIS 169737, at *4 (M.D.N.C. Sept. 29, 2018). *See also Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 97-98 (2d Cir. 2017) (substantial ground for difference of opinion exists when there are "differing rulings within this Circuit"); *accord*, *In re Trivest Partners LP*, No. 24-0102, 2025 U.S. App. LEXIS 6704, at *2-3 (6th Cir. Mar. 21, 2025). On the question of law presented here, the courts in this Circuit have taken divergent and irreconcilable paths, creating confusion that needs to be

resolved.

To summarize briefly where various courts stand on the alter ego jurisdiction question:

1. The following federal courts in North Carolina have held that the alter ego rule is "less stringent" for jurisdiction than for liability:

- *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 687 (M.D.N.C. 2011); and
- This court, by adoption of the M&R.

No other North Carolina state court has so held, nor has any other North Carolina federal court to the best of Elsevier's knowledge.

The *Pan-American* court recited the three-element instrumentality test, but only after first saying that because the test for jurisdiction is "less stringent" than for liability, a plaintiff need show "either a shell corporation, or fraud, but not both." 825 F. Supp. 2d at 687 (internal citation omitted). The inference seems plain: that if the first element of the instrumentality test – corporate control – is plausibly alleged, the other elements need not be. Consistent with this, the M&R recited the three-element instrumentality test but focused only on the first element: corporate control.

2. Four federal courts in North Carolina have explicitly stated the opposite – namely, that all three elements of the *Glenn* instrumentality rule must be met to determine jurisdiction:

- *Pfizer Inc. v. Synthon Holding, B.V.*, 386 F. Supp. 2d 666, 677-78 (M.D.N.C. 2005) (applying all three prongs of the instrumentality test and finding personal jurisdiction);

- *Anderson v. Dobson*, No. 1:06-cv-2, 2006 U.S. Dist. LEXIS 32668, at *17-19 (W.D.N.C. May 22, 2006) (dismissing a claim for alter ego jurisdiction because the first element of the test – domination of one entity by another – had not been met);

- *Jacobs v. Stein*, No. 3:16-cv-00768, 2017 U.S. Dist. LEXIS 37080, at *13-15 (W.D.N.C. Mar. 13, 2017) (setting out the three-prong test for jurisdiction, finding the first was not met, and dismissing for lack of jurisdiction); and

- *Jahagirdar v. Comput. Haus NC, Inc.*, No. 1:20-cv-33, 2021 U.S. Dist. LEXIS 75239, at *16-22 (W.D.N.C. Apr. 20, 2021) (setting out the three-prong test and allowing jurisdictional discovery).

3. The following federal courts in North Carolina have recited the three-prong instrumentality test, citing either to *Glenn* or to *Anderson*, but have not followed it in their analysis of the pleaded facts. They have not engaged in analysis of whether or how the pleaded facts satisfied the second or third elements of the instrumentality rule; rather, they have found personal jurisdiction based on allegations relevant only to the first element of the test. In short, without saying that

a "less stringent" test applies to jurisdiction they have arrived at the same result:

- *Avanti Hearth Prods., LLC v. Janifast, Inc.*, No. 3:10-cv-00019, 2010 U.S. Dist. LEXIS 79735, at *12-16 (W.D.N.C. Aug. 6, 2010);

- *Microspace Commc'n. Corp. v. Guest-Tek Interactive Entm't, Inc.*, No. 5:14-cv-535, 2015 U.S. Dist. LEXIS 108050, at *5-8 (E.D.N.C. Aug. 17, 2015);

- *Epic Tech, LLC v. STHR Grp., LLC*, No. 1:15-cv-252, 2015 U.S. Dist. LEXIS 163486, at *34-36 (M.D.N.C. Dec. 7, 2015); and

- *Hayward Indus. v. Ningbo C.F. Elec. Tech Co., Ltd.*, No. 3:20-cv-00710, 2021 U.S. Dist. LEXIS 101030, at *13-17 (W.D.N.C. May 27, 2021).

All of these cases except *Microspace* invoke, directly or indirectly, in the passages cited above, the statement in *Glenn* that "[i]t is not the presence or absence of any particular factor that is determinative." *Glenn v. Wagner*, 313 N.C. at 458. Taken out of context, that language might appear to legitimize ignoring the second or third element of the instrumentality rule. But context is crucial: the Supreme Court of North Carolina made that statement in *Glenn* in the course of discussing the variety of factors that could suffice to show *corporate domination* – the first element of the instrumentality test. *See id.* *Glenn*'s statement therefore does not mean that a court is free to disregard any of the elements of the instrumentality test, but the cases may

have interpreted it that way.

4. This wide divergence in practice among the federal courts in North Carolina is particularly striking given that the North Carolina appellate courts that have addressed this issue –whose rulings are supposed to be the touchstone for federal court jurisdiction, *see, e.g., New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005) – have ruled unequivocally that all three elements of the instrumentality test must be met to establish personal jurisdiction based on an alter ego theory. Since at least 2006, the North Carolina Court of Appeals has made it plain that the full three-element *Glenn* instrumentality test applies to jurisdiction in the same way and with the same stringency as for liability. *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 253-54 (2006). Three years later, in a case involving a different alter ego issue, the Court of Appeals, relying on *Strategic Outsourcing*, affirmed that there is no distinction under North Carolina law between alter ego proof for jurisdiction and alter ego proof for liability. *Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 656-57 (2009). No North Carolina appellate court has ever held that alter ego, when used as a basis for personal jurisdiction, is less stringent.

Given this lack of standard practice among the federal courts in North Carolina, and the disconnect between some of those courts and state jurisprudence, it is clearly time for the Fourth Circuit to sort things out and establish clear rules on

-12-
Case 3:22-cv-00034-MR-DCK     Document 108     Filed 08/29/25     Page 12 of 15

have interpreted it that way.

4. This wide divergence in practice among the federal courts in North Carolina is particularly striking given that the North Carolina appellate courts that have addressed this issue –whose rulings are supposed to be the touchstone for federal court jurisdiction, *see, e.g., New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir. 2005) – have ruled unequivocally that all three elements of the instrumentality test must be met to establish personal jurisdiction based on an alter ego theory. Since at least 2006, the North Carolina Court of Appeals has made it plain that the full three-element *Glenn* instrumentality test applies to jurisdiction in the same way and with the same stringency as for liability. *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 253-54 (2006). Three years later, in a case involving a different alter ego issue, the Court of Appeals, relying on *Strategic Outsourcing*, affirmed that there is no distinction under North Carolina law between alter ego proof for jurisdiction and alter ego proof for liability. *Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 656-57 (2009). No North Carolina appellate court has ever held that alter ego, when used as a basis for personal jurisdiction, is less stringent.

Given this lack of standard practice among the federal courts in North Carolina, and the disconnect between some of those courts and state jurisprudence, it is clearly time for the Fourth Circuit to sort things out and establish clear rules on

this issue.

### III. An Immediate Appeal Will Materially Advance the Ultimate Termination of this Litigation.

As noted above, nothing in the plaintiff's Complaint alleges facts that could be construed to show that the alleged lack of corporate separation between Elsevier Ltd. and its co-defendant Elsevier Inc. was used by either of them "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights," as required under the instrumentality test. And nothing in the Complaint alleges that "the aforesaid control and breach of duty … proximately cause[d] the injury or unjust loss complained of," as also required by the instrumentality test. *Glenn*, 313 N.C. at 455.

Accordingly, if the Fourth Circuit rules that the instrumentality test must be applied in its entirety to the question of jurisdiction, the Complaint against Elsevier Ltd. will have to be dismissed. That would be a dramatic narrowing of this case.

As the court observed in *Gilmore*, 2019 U.S. Dist. LEXIS 157329, at *17-18, a significant reduction in the number of defendants shortens the time required for trial, and thus materially advances termination of the litigation. But elimination of Elsevier Ltd. would not just reduce the number of defendants to one, it would remove from the case the party that (i) is identified in the public record as the publisher of the article in question, and (ii) contracted with the editor who oversaw the editorial process. *See* Exhibits A and B to Elsevier Ltd.'s motion. To be sure, the Complaint

makes conclusory allegations that Elsevier Inc. in some way participated in the publication of the article.  See M&R, Doc. 75, at p. 13.  But that is a narrow issue compared to the current sprawling allegations in the Complaint, and simpler and quicker to try.

## CONCLUSION

This Court has the opportunity, by certifying the issue of the standard to apply to claims of alter ego jurisdiction, to bring (if the Fourth Circuit consents to the appeal) clarity to an issue that has gotten progressively muddier and more contradictory over the last fifteen years – and at the same time to vastly simplify the case before it. Elsevier Ltd. urges the Court to take that opportunity and certify its Order for appeal on that issue.

Respectfully submitted,

Dated: August 29, 2025

**KOTIN, CRABTREE & STRONG, LLP**
 /s/ William S. Strong
 William S. Strong
 Massachusetts Bar 483520
 2223 Washington St.
 Newton, MA  02462
 Phone: (617) 227-7031
 Fax: (617) 367-2988
 Email: wstrong@kcslegal.com
**Attorneys for Defendants**

**WOMBLE BOND DICKINSON (US) LLP**

James P. Cooney III
N.C. State Bar No. 12140
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202
Phone: (704) 331-4900
Fax: (704) 331-4955
Email: Jim.Cooney@wbd-us.com

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

I hereby certify, with respect to the foregoing document, that:

1. No artificial intelligence was employed in doing the research for the preparation of said document, with the exception of such artificial intelligence as may be embedded in the standard on-line legal research source Lexis+; and

2. Every statement and every citation to an authority contained in said document was checked by an attorney in this case as to the accuracy of the proposition for which it was offered, and the citation to authority provided.

Dated: August 29, 2025                             /s/ William S. Strong
                                                   William S. Strong