**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| GLOBAL PLASMA SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELSEVIER INC. and ELSEVIER LTD.,<br><br>Defendants. | Case No. 3:22-cv-00034-KDB-WCM |

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE AUGUST 3, 2026 SUPPLEMENTAL DECLARATION OF JONATHAN I. ARNOLD, ELSEVIER INC.'S THIRD SUPPLEMENTAL RULE 26 INITIAL DISCLOSURES, AND ELSEVIER INC. AND ELSEVIER LTD.'S FOURTH SUPPLEMENTAL RULE 26 INITIAL DISCLOSURES**

Plaintiff Global Plasma Solutions, Inc. ("GPS") respectfully submits this brief in support of its Motion to Strike the August 3, 2026 Supplemental Declaration of Jonathan I. Arnold, Elsevier Inc.'s Third Supplemental Rule 26 Initial Disclosures (the "Third Supplemental Disclosures"), and Elsevier Inc. and Elsevier Ltd.'s[1] Fourth Supplemental Rule 26 Initial Disclosures (the "Fourth Supplemental Disclosures," together with the Third Supplemental Disclosures, the "Supplemental Disclosures").

## I. INTRODUCTION

Rule 26 sets the timing and content of disclosures pertaining to both fact and expert witnesses. Rule 26(a)(1) initial disclosures are required to identify both the witnesses from whom discovery should be taken and the subjects on which those witnesses may provide information, allowing parties to prepare without "unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). Rule 26(a)(2) requires that retained expert witnesses provide a

[1] Elsevier Inc. and Elsevier Ltd. are hereinafter referred to together as "Elsevier."

complete report as to their opinions by the deadlines and in the sequence ordered by the court. Elsevier has disregarded both of those limits. On August 3, 2026—the last day of written discovery—Elsevier served both the Third Supplemental Disclosures, adding four previously undisclosed witnesses and subjects of testimony, and a belated supplemental declaration from its damages expert, Dr. Jonathan I. Arnold, that advances an entirely new damages calculation based on information he had at the time of his original report. These seriously belated disclosures are prejudicial to GPS and should be stricken.

In serving these belated disclosures, Elsevier demands that it be held to a different standard than was applied to GPS. GPS last supplemented its disclosures on April 15, 2026. Elsevier moved to strike those disclosures, arguing that those April disclosures were "late" and "not harmless" and that it had "conducted seven months of document discovery on the assumption that GPS's witness list" was complete. Dkt. 203 at 3. Elsevier further asserted that curing the "surprise" of GPS's witness list would require delaying case deadlines. *Id.* The Court partially granted the motion, precluding nine of GPS's newly disclosed witnesses from offering substantive testimony and extending the schedule. Dkt. 245 at ¶¶ 2-4. Having insisted that late disclosures warranted those consequences for GPS, Elsevier cannot credibly ask for disparate treatment of its far more belated disclosures.

Moreover, Elsevier's Supplemental Disclosures did not merely add names. Having previously identified <u>no fact witnesses</u> on the truth of the First Study, Elsevier now discloses Dr. Elliot Gall on that issue and adds "truth or lack of falsity of the statements contained in [the two Building and Environment studies]" (the "Studies") to Dr. Brent Stephens's disclosed topics. Elsevier also added three Falfurrias Capital Partners ("Falfurrias") witnesses—Ed McMahan, Marc Oken, and Wilson Sullivan—to provide factual support for an unclean hands/*in pari delicto*

defense based on an alleged conspiracy between Falfurrias and GPS to defraud lenders, a topic on which it previously disclosed no witnesses. *Compare* Dkt. 206-2 (Elsevier Ltd.'s Suppl. Disclosures) and Ex. 2 (Elsevier's Second Suppl. Disclosures) *with* Ex. 3 (Third Suppl. Disclosures) and Ex. 4 (Fourth Suppl. Disclosures).[2] Similarly, Dr. Arnold's supplemental declaration also alters the case: it proffers an affirmative damages calculation for the first time, when he included no such calculation in his original report. The timing here was strategic: Elsevier waited until written discovery was complete and key depositions were over, then revealed key witnesses and damages calculations.

These coordinated disclosures are harmful, prejudicial, and incurable under the existing schedule. The only adequate cure is to strike the Supplemental Disclosures and Dr. Arnold's supplemental declaration, preclude Elsevier from calling the late disclosed witnesses to testify in this litigation, and preclude Dr. Arnold from testifying on his new damages calculation.

## II. PROCEDURAL BACKGROUND

All parties served initial disclosures on September 5, 2025, in compliance with the Court's first case management order. Dkt. 106; Dkt. 202-1; Dkt. 206-1.[3] All parties supplemented as discovery progressed. GPS served supplemental disclosures on October 16, 2025, April 3, 2026,

[2] Elsevier Inc. also disclosed two GPS employees, Charles Waddell and Glenn Brinckman in the Third Supplemental Disclosures, and Ken Walker, an additional employee at Falfurrias. The Fourth Supplemental Disclosures, jointly submitted by Elsevier Inc. and Elsevier Ltd., disclosed these witnesses for Elsevier Ltd. and added Dr. John Storey, a former member of the GPS Scientific Advisory Board. These disclosures are untimely. However, because GPS had already disclosed Mr. Waddell, Mr. Brinckman, Mr. Walker, and Dr. Storey (as an expert) on its witness lists, the disclosures are not prejudicial in the same way as the disclosures of the other witnesses in the Supplemental Disclosures. As such, GPS does not move to strike Mr. Waddell, Mr. Brinckman, Mr. Walker, or Dr. Storey, nor does it seek to prevent Elsevier from questioning them at trial to the extent they appear.

[3] Rule 26 initial disclosures were served by Elsevier in Microsoft Word format on September 5, 2025. When the document was converted to PDF for filing as Dkt. 206-1, the date on the PDF changed to May 8, 2026, the date of conversion.

and April 15, 2026. Dkt. 202-2; Dkt. 202-3; Dkt. 202-4. Elsevier served its first and second supplemental disclosures on March 9 and May 7, 2026, respectively. Ex. 1 (Elsevier Inc.'s Suppl. Disclosures) and Dkt. 206-2 (Elsevier Ltd.'s Suppl. Disclosures); Ex. 2 (Elsevier's Second Suppl. Disclosures).

Elsevier moved to strike GPS's April 3 and April 15 disclosures, arguing that the "late" supplementation was untimely, surprising, and prejudicial. Dkt. 203. On July 17, 2026, the Court granted that motion in part. Dkt. 245. The Court's order precluded nine GPS witnesses from offering substantive testimony, gave Elsevier five additional depositions, and extended the deposition deadlines, with written discovery closing as scheduled. *Id.* at 2. On July 22, 2026, GPS deposed Dr. Elliott Gall, one of the authors of the Studies. *See* Ex. 5 (Deposition Excerpts of Elliott Gall ("Gall Dep.")). At the time, Dr. Gall had not been disclosed by any party in initial disclosures. At the deposition, Dr. Gall disclosed for the first time that he had a common interest agreement with Elsevier dating back to 2025 and had spent many hours with Elsevier's lawyers preparing for his testimony. *Id.* at 13:6-23.

The Court also set deadlines for disclosure of expert reports, rebuttal reports, and any reply report. Dkt. 168 at 1. GPS timely served an opening expert report of its retained damages expert Michael Spindler on the deadline of March 20, 2026. Mr. Spindler's March 20 report relied extensively on the BCC Air Purifier Industry's 2020–2025 actual growth rates, which he used to construct his damages model. Dkt. 283 at 250 (Arnold Rep.) ¶ 43 (discussing Spindler's reliance on BCC data). Elsevier then served a rebuttal report by its damages expert Dr. Arnold on May 1, 2026, the court-ordered deadline for rebuttal reports. Dr. Arnold's original report discussed the BCC Growth Rates and GPS's 2019 revenue extensively, but he did not use this data to propose an alternate damages calculation. *Id.* at 250-53, 281-82 (Arnold Rep.) ¶¶ 43-47, 115. GPS served

a timely reply report from Mr. Spindler on May 29, 2026. Mr. Spindler was then deposed on June 23, 2026 and Dr. Arnold was deposed on July 1, 2026.

On August 3, 2026—the last day of written discovery—Elsevier Inc. served the Third Supplemental Disclosures and a supplemental declaration from Dr. Arnold. Ex. 3 (Third Suppl. Disclosures); Ex. 6 (Arnold Suppl. Decl.).[4] Sixteen days after written discovery closed, Elsevier Inc. and Elsevier Ltd. jointly served the Fourth Supplemental Disclosures on August 19, 2026. Ex. 4 (Fourth Suppl. Disclosures).

Elsevier Inc.'s Third Supplemental Disclosures added four witnesses not previously disclosed by either party: Ed McMahan, Marc Oken, Wilson Sullivan, and Dr. Elliot Gall. Ex. 3 (Third Suppl. Disclosures). Dr. Gall was disclosed for the truth of the Studies, while the other three witnesses were disclosed as having knowledge of Elsevier's unclean hands defense. The Third Supplemental Disclosures also expanded Dr. Stephens's previously disclosed topics—formerly limited to the research, writing, and accuracy of the Studies—to include the truth of statements in the Studies. Notably, Elsevier's previous initial disclosures had not disclosed any fact witnesses as having knowledge of the truth of statements in the Studies. The Fourth Supplemental Disclosures added the witnesses from the Third Supplemental Disclosures to Elsevier Ltd.'s witness list and added Dr. John Storey (a GPS expert witness) to both entities' lists.

At the same time, Elsevier served a supplemental declaration from its rebuttal damages expert, Dr. Jonathan I. Arnold, on August 3, 2026—ninety days late. *See* Ex. 6 (Arnold Suppl. Decl.). Although presented as a response to documents produced after Dr. Arnold's original rebuttal report, the declaration does not discuss any documents produced after the date of the

[4] Exhibit 6 is a redacted copy of the supplemental declaration of Dr. Arnold. GPS's actual revenue numbers are redacted and not filed under seal as they are not part of the basis for this Motion.

original report. Instead, it relies entirely on information already available before Dr. Arnold's original report and cited in GPS's March 20, 2026 opening damages report by Mr. Spindler: GPS's 2019 revenue and the BCC Air Purifier Industry's 2020–2025 actual growth rates. *See* Ex. 6 (Arnold Suppl. Decl.) ¶¶ 2–4; Dkt. 283 at 236 (Arnold Rep.) ¶ 11; Dkt. 277-1 (Spindler Rep.) ¶¶ 302, 305. Dr. Arnold's report offers an alternate damages calculation as to "but for" revenues based on these numbers, whereas his previous report did not advance any such calculation. Dr. Arnold's August 3 report therefore advances a new opinion and is not a true supplement.

## III. ARGUMENT

### A. All *Southern States* Factors Favor Exclusion of the Supplemental Disclosures

The Federal Rules of Civil Procedure require parties to disclose the identity of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26 therefore requires disclosure of both who may provide information, and what that information concerns; a witness name alone does not identify the subjects of the witness's information. Parties must also supplement their disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete[.]" Fed. R. Civ. P. 26(e)(1)(A). "The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, No. 3:19-CV-00515-KDB-DSC, 2022 WL 884275, at *2 (W.D.N.C. Mar. 24, 2022) (Bell, J.) (quoting *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017)).

Elsevier cannot demand one disclosure standard from GPS and claim another for itself. It moved to strike GPS's April 2026 supplemental disclosures as "late" and prejudicial. Dkt. 203. Yet Elsevier served its third and fourth supplemental disclosures over three and a half months after GPS's final April 15 disclosure. Elsevier had ample opportunity to supplement earlier; it instead

waited until written discovery ended, when GPS could no longer meaningfully adjust its deposition or pretrial strategy. This is the same prejudice Elsevier invoked against GPS and the same reason its own late disclosures should be excluded.

The first *Southern States* factor—surprise—strongly favors GPS. Elsevier served the Supplemental Disclosures without warning after insisting that GPS's April disclosures were too late. Dkt. 202; Dkt. 203. Because Elsevier had taken that position, GPS was entitled to treat Elsevier's May 7 disclosures as complete. Instead, Elsevier added Dr. Gall and three Falfurrias witnesses and expanded Dr. Stephens's subjects to provide factual support for a truth theory concerning the Studies and an unclean hands/*in pari delicto* defense tied to Falfurrias. *See Barlow v. United States Dep't of Def.*, No. 24-3643-BAH, 2026 WL 2267779, at *3 (D. Md. Aug. 5, 2026) ("[S]urprise occurs when the disclosing party's responses were insufficient to alert the opposing party of their intention to use such a witness during trial.") (internal quotations and citation omitted). This is precisely the kind of surprise that Rule 26's disclosure requirement is designed to prevent.

The second *Southern States* factor—GPS's ability to cure the surprise—also strongly favors GPS. No meaningful cure exists within the schedule: written discovery is closed, GPS has noticed all of its allocated depositions, *Daubert* motions have begun, summary judgment motions are imminent, and trial is set for early December. *See Clear Touch Interactive, Inc. v. Ockers Co.*, 171 F.4th 715, 731 (4th Cir. 2026) (stating there is "no practical way to cure such a prejudice" when a witness was disclosed less than four months before trial). Adding depositions of the late-disclosed witnesses would not cure the harm. GPS selected its witnesses, conducted depositions, and framed its dispositive and trial arguments without knowing the witnesses or theories for which Elsevier would use them. A cure would require reopening discovery, including corporate and third-

party discovery, and revisiting those choices. The schedule provides no time for that, and extending it would further prejudice GPS, which has waited more than four years for its day in court. *Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 231 (4th Cir. 2019) ("given that the disclosure was made during the last days of discovery, Appellees did not have a reasonable opportunity to depose witnesses or to fairly prepare any rebuttal[.]").

That lack of a cure is concrete. Elsevier disclosed Dr. Gall and expanded Dr. Stephens's subjects to support a new "truth" theory concerning the Studies, although it had not previously disclosed any fact witness on that issue. GPS deposed Dr. Gall before learning that Elsevier intended to offer him on the affirmative defense of truth. Elsevier's experts had uniformly characterized the Studies as "scientific opinion" that was neither true nor false, so GPS had no reason to explore a "truth" defense at that deposition. The disclosure also deprived GPS of the chance to pursue relevant documents and follow-up discovery or examine Dr. Stephens on the expanded topic. At minimum, the expanded topic is undisclosed—and thus impermissible—expert testimony. Regardless, the late disclosure is incurably prejudicial to GPS.

Elsevier's disclosure of Falfurrias witnesses Ed McMahan, Marc Oken, and Wilson Sullivan to support an unclean hands/*in pari delicto* defense is also prejudicial. Had GPS known Elsevier might call these witnesses, it would have investigated their purported knowledge or potentially even sought third-party discovery to rebut Elsevier's claims. It did not because Elsevier withheld that information. The existing schedule cannot provide an equivalent opportunity now.

The third *Southern States* factor—disruption—strongly favors GPS. Allowing the Supplemental Disclosures would force GPS to rebuild its discovery, dispositive-motion, and trial strategy weeks before summary-judgment motions are due and months before trial. GPS would

need to re-depose witnesses, and pursue additional document and written discovery. The schedule provides no time for any of it. Elsevier should not be permitted to upend the case at this late stage.

The fourth *Southern States* factor—importance—also favors GPS because the more important the evidence, the greater the prejudice from withholding it. Elsevier offers the Falfurrias witnesses as factual support for an unclean hands/*in pari delicto* defense involving GPS and Falfurrias—a defense which is unsupported by the current record evidence. Similarly, Elsevier had never previously indicated it would support its truth defense through fact witnesses and certainly did not disclose that it intended to call the authors of the Studies as undisclosed experts on "truth." Elsevier did not discover these witnesses or theories only at the end of discovery; they supply the supposed proof for defenses it chose to list in its Answer. If Elsevier contends this evidence is critical, that "only reinforces the prejudice caused by the untimely nature of its filing." *Morgan v. City of Charlotte*, No. 3:22-CV-00003-KDB-DCK, 2023 WL 4002524, at *5 (W.D.N.C. June 14, 2023) (Bell, J.), *aff'd*, 180 F.4th 159 (4th Cir. 2026).

Finally, the fifth *Southern States* factor—explanation—strongly favors GPS. Elsevier has no explanation for waiting until the last day of written discovery to serve the Supplemental Disclosures, and the record shows it knew or should have known much earlier that it would rely on at least some of these witnesses. Dr. Gall met with Elsevier's counsel to prepare for his deposition under a common-interest legal agreement signed in early 2025, which Elsevier has not produced. Gall Dep. at 13:6-23; 14:2-7. He met with Elsevier's counsel four times in the three weeks before the deposition. *Id.* at 14:1–15:11; 15:9–16:12. The meetings totaled 10 to 11 hours. *Id.* at 14:15–15:9 (testifying that the meetings lasted "two hours," "two to three hours," "an hour," and "five hours," respectively). Elsevier disclosed Dr. Gall only after GPS had deposed him, depriving GPS of the opportunity to examine him as a disclosed trial witness on a significant

affirmative defense. Elsevier also kept Dr. Stephens on its witness list for months, then expanded his subjects after written discovery closed to include the truth or lack of falsity of the Studies. Before these disclosures, neither Elsevier Inc. nor Elsevier Ltd. had disclosed fact witnesses for that theory, and Elsevier refused to answer GPS's interrogatories concerning it. *See* Dkt. 287 at 4. Elsevier withheld the factual support it now offers until GPS's discovery choices were fixed. That is not good-faith conduct.

Nothing short of striking the Supplemental Disclosures can cure this prejudice. Elsevier disclosed new witnesses and subjects after written discovery closed and just before depositions ended, denying GPS a fair opportunity to investigate and respond. *Southern States*, 318 F.3d at 597. GPS prepared for trial in reliance on Elsevier's May 7, 2026 supplemental initial disclosures. Elsevier should have disclosed—long before the last day of written discovery—not only the witnesses it might use at trial, but also the subjects for which it would call them. Any claim that Elsevier did not know these individuals were witnesses it "may use to support its claims or defenses" is untenable, especially because Elsevier subpoenaed Falfurrias on February 12, 2026. Fed. R. Civ. P. 26(a)(1)(A)(i). Elsevier should not be permitted to convert withholding information into a strategic advantage.

### B. Dr. Arnold's Supplemental Declaration Is Untimely and Has No Substantial Justification

Supplementation of an expert report permits a party to correct "inadvertent errors or omissions," but it is not "a license to amend an expert report to avoid summary judgment." *Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624, 630-631 (E.D.N.C. 2008) (quoting *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003) (Rule 26 "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report[.]") (internal citations omitted); *Coles v. Perry*, 217 F.R.D.

1, 3 (D.D.C. 2003) (Rule 26 "does not grant a license to supplement a previously filed expert report because a party wants to[.]"); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (Rule 26 "imposes a *duty* on Plaintiffs; it grants them no *right* to produce information in a belated fashion.")).

Courts therefore distinguish "true supplementation" from "gamesmanship." *Gallagher*, 568 F. Supp. 2d at 631 (quoting *Beller*, 221 F.R.D. at 701). Otherwise, "preliminary reports could be followed by supplementary reports" without finality, as parties repeatedly modify opinions to buttress their positions. *Id.* Allowing expert supplementation "whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002).

Dr. Arnold's supplemental declaration is not true supplementation. It does not correct any error or present new information. *Gallagher*, 568 F. Supp. 2d at 630-631. Instead, it presents an entirely new opinion and calculation based on information he had long before his original report, including information he cited in his original report. There is no substantial justification for such a belated disclosure of the new opinion presented in Dr. Arnold's supplemental declaration—more than three months after he served his report and almost two months after his deposition. In fact, Dr. Arnold does not even attempt to provide an explanation for his belated supplemental declaration. Further, this late submission prejudices GPS, which is actively briefing *Daubert* motions and which already served a reply report from Mr. Spindler in reliance on Dr. Arnold's report being complete.

Dr. Arnold wholly failed to show that his failure to comply with the rules was justified or harmless. *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 211-12 (4th Cir. 2017) (excluding an

expert's supplemental report for being neither substantially justified nor harmless when "virtually all of the additional information [he] used to calculate [] damages was available . . . before expert discovery closed" and the supplemental report "included opinions outside the scope of [the] original report."). Allowing the supplemental declaration would reward gamesmanship and prejudice GPS.

## IV. CONCLUSION

GPS respectfully requests that the Court strike Ed McMahan, Marc Oken, Wilson Sullivan, and Elliot Gall from the Supplemental Disclosures, preclude Elsevier from calling Ed McMahan, Marc Oken, Wilson Sullivan, and Elliot Gall at trial or using them as declarants at summary judgment, preclude Brent Stephens from testifying at hearings or at trial to the truth or lack of falsity of the Studies, and strike Jonathan I. Arnold's supplemental declaration in its entirety, and preclude him from testifying on the new opinion therein.

Date: August 27, 2026

**MCGUIREWOODS LLP**

By: /s/ *Robert A. Muckenfuss*
Robert A. Muckenfuss (SBN #28218)
Kelly Warlich (SBN #51053)
Hannah K. Caison (SBN #59260)
Zachary L. McCamey (SBN #53540)
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Tel: (704) 343-2052
Fax: (704) 444-8707
rmuckenfuss@mcguirewoods.com
kwarlich@mcguirewoods.com
hcaison@mcguirewoods.com
zmccamey@mcguirewoods.com

Lucy Jewett Wheatley (*pro hac vice*)
Claire Hagan Eller (*pro hac vice*)
800 East Canal Street
Richmond, VA 23219

Tel: (804) 775-4320
Fax: (804) 698-2017
lwheatley@mcguirewoods.com
celler@mcguirewoods.com

Peter J. Wright (NC Bar # 62879)
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Tel: (919) 755-6600
Fax: (919) 755-6699
pwright@mcguirewoods.com

*Attorneys for Plaintiff Global Plasma Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August 2026, the foregoing was filed electronically with the Clerk of Court for the Western District of North Carolina by using the CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Robert A. Muckenfuss*
Robert A. Muckenfuss

**CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE**

I hereby certify as to the foregoing that:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Robert A. Muckenfuss*
Robert A. Muckenfuss