**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:22-CV-00034-KDB-WCM**

| | |
|---|---|
| **GLOBAL PLASMA SOLUTIONS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ELSEVIER LTD AND ELSEVIER INC.,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Parties' *Daubert* motions seeking to exclude, in whole or part, the testimony of several of each other's expert witnesses (Doc. Nos. 271, 273, 278, 281 and 285). The Court has carefully considered these motions and the Parties' briefs and exhibits. Because the Court finds that, for the limited purpose of ruling on these motions, each of the challenged witnesses is a credentialed expert in a relevant field and may offer opinions that satisfy the standards of Rule 702 of the Federal Rules of Evidence ("FRE") (hereafter, "Rule 702"), the Court will **DENY** all of the motions. However, if this matter goes to trial, the Court will, if necessary sua sponte, ensure that the experts' respective testimonies strictly adhere to requirements of FRE Rule 702, including, but not limited to, not invading the province of the jury or the Court or simply speculating as to the amount of damages caused by the alleged wrongdoing.

## I. LEGAL STANDARD

The Parties appear to broadly agree on the legal standards governing the Court's "gatekeeping" role under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. Indeed, the Parties' submissions for and against exclusion of the various experts "shade"

the legal standards similarly, depending on their positions. Each emphasizes the Court's flexibility and the scope of permissible testimony when promoting their own experts, then stresses the importance of the Court's oversight and the requirements for "reliable" testimony when attacking the opposing party's experts. Of course, there ought to be (and is) only one governing legal standard, notwithstanding the Parties' results-oriented descriptions. *See generally, Moore v. Barnes*, 802 F. Supp. 3d 792, 816-20 (E.D.N.C. 2025) (detailing the considerations to admit expert testimony under FRE Rule 702).

In *Noble Bottling, LLC v. Gora LLC*, the court summarized the relevant authorities. No. 3:20-cv-00363-KDB-DCK, 2023 WL 105333, at *1-2 (W.D.N.C. Jan. 4, 2023). Rule 702 governs the admissibility of expert testimony. *See United States v. Wilson*, 484 F.3d 267, 274-75 (4th Cir. 2007). Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the testimony must establish its admissibility by a preponderance of proof. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993)).

In applying Rule 702, the Court's role has been described as a "gatekeeper" to assess if "the opinion is relevant to the facts at issue" and to examine "whether the reasoning or methodology underlying the expert's proffered opinion is reliable." *Westberry v. Gislaved Gummi*

*AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 592); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (describing the District Court as "gatekeeper" when assessing whether the proffered evidence is "relevant" and "reliable"). Importantly, however, the gatekeeper function does not require that the Court "determine that the proffered expert testimony is irrefutable or certainly correct" because expert testimony is "subject to testing by 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (quoting *Daubert*, 509 U.S. at 596).

There is no "mechanistic test for determining the reliability of an expert's proffered testimony; on the contrary, 'the test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *Peters-Martin v. Navistar Int. Trans. Corp.*, 410 Fed. Appx. 612, 617 (4th Cir. 2011) (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)). The nature of the expert testimony is a critical factor in that inquiry. In this case, some of the challenged testimony is not strictly scientific in nature, but rather experiential. As the Fourth Circuit noted in *Wilson*, "experiential expert testimony . . . does not 'rely on anything like a scientific method.'" *Wilson*, 484 F.3d at 274 (quoting Fed. R. Evid. 702). As a result, it is not characterized by "falsifiability, or refutability, or testability" like purely scientific testimony. *Id.* (quoting *Daubert*, 509 U.S. at 593).

Nevertheless, the court retains a gatekeeping role "to 'make certain that a [non-scientific] expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (citing *Kumho Tire Co.*, 526 U.S. at 152); *see In re Zetia (Ezetimibe) Antitrust*

*Litig.*, No. 2:18-MD-2836, 2021 WL 6690337, at *2-3 (E.D. Va. Aug. 16, 2021). Thus, an experiential expert must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (quoting Fed. R. Evid. 702 Advisory Committee Note) (alterations in original).

## II. DISCUSSION

Plaintiff Global Plasma Solutions, Inc. ("GPS") seeks to preclude three of Defendants Elsevier Inc. and Elsevier LTD.'s (together, "Elsevier") experts from testifying—Rebecca Betensky, Jonathan Arnold and V. Faye McNeil. Elsevier similarly asks the Court to exclude testimony from three of GPS' experts—Steve Wasserman, John Storey and Michael Spindler.

Dr. Betensky, Dr. McNeil, Mr. Wasserman and Dr. Storey are proffered "publishing" or scientific experts, who plan to offer affirmative and rebuttal opinions with respect to the nature of the Elsevier article in dispute, how a scientist or technical reader would interpret the language of the article, the expectations related to a claim that an article has been "peer reviewed," and other similar topics. While these experts have varying credentials, each of them has sufficient experience or education to express a "reliable" opinion on these issues, which all appear to be at least potentially relevant to the claims and defenses asserted by the Parties. *See* FRE 702. At trial, it will ultimately be up to the jury to judge this "battle of experts," in light of what will no doubt be vigorous cross-examinations.

However, the Court will still carefully monitor their trial testimony. In particular, the Court will ensure that any testimony related to the "meaning" of various words in the article reflects an expert opinion that will assist the jury with its decision rather than allow "the opinion of an expert" to supplant the role of the jury—as the jury remains the ultimate decision maker with respect to

the truth or falsity of the article. *See United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) ("To be admissible, expert testimony must 'help the trier of fact to understand the evidence or to determine a fact in issue.' . . . The helpfulness requirement of Rule 702 thus prohibits the use of expert testimony related to matters which are 'obviously . . . within the common knowledge of jurors.'"). Also, the experts may not offer opinions that merely repeat or adopt factual narratives supplied by counsel. Testimony that functions as advocacy or that cannot be meaningfully tested through cross-examination will be excluded under Rule 702. *See United States ex rel. Shepherd v. Fluor Corp., Inc.*, No. 6:13-CV-02428-JD, 2026 WL 105764, at *12 (D.S.C. Jan. 14, 2026).

The remaining experts, Mr. Spindler and Dr. Arnold intend to offer opinions related to damages. Elsevier's primary argument against Mr. Spindler is that his damages opinion does not appropriately apportion the claimed decline in GPS's value to only reflect the amount purportedly caused by Elsevier's alleged defamation or false advertising. In response, GPS does not challenge—and could not challenge—the necessity of limiting its damages only to that caused by Elsevier's allegedly wrongful conduct. *See Tyger Constr. Co. v. Pensacola Constr. Co*., 29 F.3d 137, 142 (4th Cir. 1994). Rather, GPS argues that Mr. Spindler's damages calculation inherently takes other potential causes of the decline in value into account. For now, the Court will not exclude Mr. Spindler's testimony; but, if at trial the Court determines that Mr. Spindler's calculations have not taken into account other factors that have likely impacted GPS' value, then the Court will exclude his testimony to avoid forcing the jury to speculate as to the amount of damages properly limited to causally related harm. Further, the Court will not exclude Elsevier's rebuttal damages expert's testimony regarding circumstances unrelated to Elsevier's conduct which could have negatively affected GPS' value. That is, if the jury is permitted to consider Mr. Spindler's testimony, they will also be permitted to hear Elsevier's expert's contentions.

## III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

The Parties' *Daubert* motions seeking to exclude, in whole or part, the testimony of the expert witnesses discussed above (Doc. Nos. 271, 273, 278, 281 and 285) are **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 15, 2026

Kenneth D. Bell
United States District Judge