IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00034-KDB-WCM

| | |
|---|---|
| **GLOBAL PLASMA SOLUTIONS, INC. ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ELSEVIER LTD AND ELSEVIER INC. ,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on several motions by all Parties, which the Court has carefully considered along with the Parties' arguments in support and in opposition. For the reasons discussed below, the Court will **GRANT in part and DENY in part** the motions.

**1. Motion to Compel by Defendants (Doc. No. 313)**

Defendants' (together "Elsevier") Motion to Compel seeks an order compelling Plaintiff Global Plasma Solutions, Inc. ("GPS") to produce over 100 documents (primarily email communications) on the grounds that the documents are not privileged as claimed by GPS in its "Privilege Log." With respect to the assertions of attorney-client privilege by all Parties, the Court is guided by several overarching principles, but the Court begins the inquiry from the general proposition that courts disfavor assertions of evidentiary privilege because they shield evidence from the truth-seeking process. *See Herbert v. Lando*, 441 U.S. 153, 175 (1979)). Because evidentiary privileges are disfavored, the Fourth Circuit recognizes that assertions of attorney-client privilege should be construed narrowly. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998); *Carefirst of Maryland, Inc. v. Johnson & Johnson*, No. 2:23CV629, 2025 WL 3486760, at

*1 (E.D. Va. Apr. 14, 2025). Notwithstanding this narrow construction, after reviewing each of the challenged documents *in camera*, the Court finds that, with the few exceptions listed below, all the documents include core privileged communications involving or related to attorneys providing or being asked to provide legal advice. Therefore, Defendants' Motion to Compel is denied as to all challenged documents with the exception of *in camera* Doc. Nos. 13, 98-103, and 105, for which the motion is granted.

The Court finds that the portion of Doc. No. 13 that has been redacted is not privileged and must be produced because it is a business rather than a legal communication. To determine whether an attorney is acting in a legal capacity, courts look to whether the "primary purpose" of the communication is to "solicit[ ] legal, rather than business, advice." *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 514 (M.D.N.C. 1986); *Brainware, Inc. v. Scan-Optics, Ltd.*, No. 3:11cv755, 2012 WL 2872812, at *3 (E.D. Va. July 12, 2012) (explaining that the party claiming privilege would have "to show that the [in-house] lawyers' advice was more likely 'legal' than 'business' in nature."). The fact that GPS' counsel was copied on the email does not alone make it privileged. *See Carefirst of Maryland, Inc.*, at *2 ("The simple fact that an attorney is copied on a communication does not make that communication about 'legal matters' and subject to attorney-client privilege.").

*In camera* Doc. Nos. 98 and 105 must also be produced—but only in part. The top email (with the subject line redacted) is not privileged, as it is a discussion between two companies regarding the allocation of their joint legal expenses. The remainder of the documents may be redacted as privileged communications with outside counsel.

*In camera* Doc. Nos. 99-103 must be produced for the same reason as *in camera* Doc. No. 13. The documents discuss attendance at a business conference and do not reflect a request for or the provision of legal advice (just an attempt at humor).

**2. <u>Motion to Compel by Plaintiff</u> (Doc. No. 311)**

Plaintiff's Motion to Compel similarly seeks an order compelling Elsevier to produce numerous documents on the grounds that the documents (again primarily email communications) are not privileged as claimed in Elsevier's "Privilege Log." After *in camera* review of the contested documents, the Court orders either that they are privileged and may be withheld or are not and must be produced as discussed below.

**a. Common Interest Privilege Documents**

A significant number of the documents for which Elsevier claims an attorney-client privilege are communications with Editors for the Building and Environment Journal (the "Editors"), in which the allegedly defamatory article at the heart of this dispute was published. The Editors are not Elsevier employees; rather, they are third parties under contract to provide editorial services.[1] However, Elsevier argues that the Editors are within the scope of protected communications with counsel (and Elsevier employees acting on behalf of counsel) because they have a "common interest" in responding to GPS' claims.

The "common interest rule," also known as a "joint defense privilege," is an exception to the general rule that disclosure to a third party of privileged information thereby waives the

[1] In its Privilege Log, Elsevier sometimes refers to documents to or from the Editors as being between "Elsevier employees." This appears to be untrue. The purported Editor Agreement templates available to the Court state that "Nothing in this Agreement shall be deemed to create any employer/employee, agency, fiduciary, joint venture or similar relationship between the parties." If Elsevier's agreements with the specific Editors identified in the disputed documents instead created an employment relationship with Elsevier then those Agreements should have been provided to the Court for its consideration.

privilege. *See In re Grand Jury Subpoenas, 89–3 and 89–4, John Doe 89–129*, 902 F.2d 244, 248–49 (4th Cir.1990) ("In re Grand Jury Subpoenas"); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2024 WL 1543179, at *1 (D.S.C. Mar. 7, 2024). The Fourth Circuit recognizes that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims" without waiving privileged attorney-client communications or protected work product. *In re Grand Jury Subpoenas*, 902 F.2d at 249; *see also Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir.2010) ("The common interest doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims.").

"[A]s an exception to waiver, the joint defense or common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." *In re Grand Jury Subpoenas*, 902 F.2d at 249. To be protected under the common interest privilege, "shared or jointly created information," or communication between the parties, "must first satisfy the traditional requisites for the attorney-client or work product privilege." *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C.2005). "Additionally, the proponent of the privilege must at least demonstrate that (1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived." *In re Aqueous*, 2024 WL 1543179, at *1 (citing *In re Grand Jury Subpoenas*, 902 F.2d at 248–49).

However, the party resisting discovery—here, Elsevier—must establish that "a joint strategy of representation" was "undertaken" prior to the purportedly privileged communication.

*See id*. (citing *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (noting the common interest doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel"). Where communication precedes an agreement on a joint defense, the evidentiary privilege does not apply. *See United States v. Bay State Ambulance & Hosp. Rent. Serv.*, 874 F.2d 20, 29 (1st Cir. 1989) (even though parties shared similar interests, the common interest privilege did not apply where the parties had not agreed to pursue a joint defense and the information was imparted without intent to further the joint defense); *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333 (4th Cir. 2005) (communications made by corporate agent to corporate counsel were not privileged as to the corporate agent; even if the agent was pursuing a common interest with the corporation, the communications were made before the parties agreed on a common defense).

While the Editors may have shared an interest with Elsevier in thwarting any claim against the journal they edited (and may have been entitled to indemnification in the event of a claim against them arising out of their actions, which is not presently at issue), there is no evidence in the record that the Editors and Elsevier were acting in concert pursuant to a joint plan to defend against GPS' claims before these communications occurred. Rather, Elsevier was communicating with the Editors as part of its own singular efforts to defend itself. Although that defense might well inure to the Editors' benefit, that fact does not bring all communications with the Editors within the scope of the joint defense / common interest privilege. Otherwise, the privilege would sweep too broadly to encompass all those who might—for whatever legal reason of their own—want a given party to succeed.

Indeed, the clearest reflection of the lack of any defensive coordination among the Editors and Elsevier is Volume 1 *in camera* Doc. No. 13 (Bates # ELSEVIER_000464444) in which Editor Bert Blocken responds to an email from Elsevier's counsel informing him of the GPS lawsuit and that Elsevier "may rely on [him] to support its defenses," as follows:

> Dear Mr. Strong
> Thank you for your email.
> I do not see how I could help in this case, and based on past bad experiences, I am not available to join in lawsuits by giving an affidavit or acting as a witness. So please remove my name from the list. I am sorry I cannot help you in this matter.
> Best regards.

Plainly, whatever the overall "common interests" among Elsevier and the Editors may be, the relationships reflected in the documents reviewed by the Court do not satisfy the narrow intent of the common interest exception, which is to allow joint defendants or potential defendants to *jointly* pursue their *common* defense in circumstances where one counsel cannot ethically represent both defendants or a single lawyer is representing both (which is not alleged here). Again, here the Editors were simply being used as resources to prepare Elsevier employees for depositions, provide documents in discovery, etc. as part of Elsevier's own defense.

Accordingly, GPS' Motion to Compel is granted as to Volume 1 *in camera* Doc. Nos. 7.2, 7.3, 7.4, 8, 11.1, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32.

However, a number of the reviewed documents do reflect communications between or among Elsevier employees (sometimes including counsel) related to this litigation or other legal issues, and are therefore privileged. So, as to Volume 1 *in camera* Doc. Nos. 1, 2, 3, 4, 5, 6, 9, 10, 16, 23.1, and 33, the motion is denied.

**b. Other Documents**

In addition to the "common interest" documents, GPS seeks to compel production of a number of other documents. Each is discussed below, by their "Volume 2" *in camera* Doc. No.

**i. Volume 2 Doc. Nos. 1.1, 2.2, 3.4, 4.2, 5.3, 5.4, 7.3**

All of these documents are drafts or final versions of business documents, some of which involve "compliance" or related issues. For the same reasons discussed above with respect to GPS' business documents, these documents are not privileged simply because in house or outside counsel reviewed and/or commented on their contents. Therefore, they must be produced; however, Elsevier may redact any attorney comments made on the document.

**ii. Volume 2 Doc. No. 6.4**

Doc. No. 6.4 is a template for preparing Editor Agreements. The Court will protect it as privileged so long as any actual agreements with the relevant Editors have been produced in discovery.

**iii. Volume 2 Doc. No. 8.2**

Doc. No. 8.2 is a privileged communication related to the lawsuit and need not be produced.

**iv. Volume 2 Doc. No. 9**

Doc. No. 9 is a request to prepare several Editor termination letters for Editors who decided to "resign their roles in BAE." It does not appear to have been sent to an attorney (the recipient is "Uma," which is not the name of any identified counsel. Unless this email was sent to an attorney or the in house legal department, it must be produced. If it was sent to counsel then it is privileged.

**3. <u>Motions to Seal</u> (Doc. Nos. 279, 284, 305, 309, 331, 336, 346, 355)**

In nearly every filing in this matter, the Parties file some portion under seal, together with the required Motion to Seal. The Court has often discussed the strict legal principles applicable to

publicly filed motions, in particular dispositive motions at summary judgment. *See Reetz v. Lowe's Companies, Inc.*, No. 5:18-cv-00075-KDB-DCK, 2021 WL 3354167, at *1 (W.D.N.C. Aug. 2, 2021). Under the governing First Amendment standard, a "denial of access" to publicly filed documents "must be necessitated by a compelling . . . interest and narrowly tailored to serve that interest." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *see also Jones v. Lowe's Companies*, *Inc*., 402 F. Supp. 2d 266, 278 (W.D.N.C. 2019) (explaining that although the First Amendment standard as expressed in *Rushford* relates to compelling government interests, "courts have recognized that . . . 'private interests might also implicate higher values sufficient to override . . . the First Amendment presumption of public access'") (quoting *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580 (E.D. Va. 2009)).

Accordingly, a party moving to seal documents filed in support of summary judgment in a civil case bears a heavy burden. *See Rushford*, 846 F.2d at 252 (applying the First Amendment right of access standard to summary judgment filings and noting "summary judgment adjudicates substantive rights and serves as a substitute for a trial"); *Jennings v. Univ. of N. Carolina at Chapel Hill*, 340 F. Supp. 2d 679, 681 (M.D.N.C. 2004) (applying rule requiring open access to filed documents in connection with dispositive summary judgment motion).

Nevertheless, the Court grants each of the listed Motions to Seal, pending the Court's ruling on the Motions for Summary Judgment. At that time, all documents and other exhibits considered by the Court will be unsealed in accordance with the authority described above. Further, the Court again reminds the Parties that the Summary Judgment hearing and trial of this dispute will be in open court, which the Court does not intend to close except upon exceptional circumstances (which do not appear to be present here). *See 2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing,*

*LLC*, No. 3:24-CV-00886-KDB-SCR, 2025 WL 2480153, at *1 (W.D.N.C. Aug. 11, 2025) ("Even though it has broadly permitted filings under seal, once the Court uses any of that "confidential" information in … ruling on … anticipated Motions for Summary Judgment or the information is presented at trial, then it will become part of the public record, with the attendant consequences to all concerned").

**4. <u>Motion for Judicial Notice</u> (Doc. No. 328)**

Elsevier moves the Court to take judicial notice judicial notice of three lawsuits that GPS filed in the Northern District of Texas, the Northern District of Georgia, and the Northern District of California, as well as three specific filings in the Northern District of Texas action: GPS' complaint, GPS' response in opposition to Defendants' motions for summary judgment, and the Court's order on Defendants' summary judgment motions (the "Texas Order"). *See* Doc. No. 328. Elsevier seeks judicial notice of these documents to support its affirmative defense that the Texas Order collaterally estops GPS from disputing that GPS is a limited-purpose public figure for the purposes of this litigation. The Court will grant the motion and take judicial notice—to the extent it is even necessary—of the three lawsuits and the listed filings in the Texas action. However, the Court's taking of such notice does not in any way decide or even suggest any consideration of the merits of Elsevier's affirmative collateral estoppel defense, which the Court does not reach in making this ruling.

**5. <u>Motion to Strike</u> (Doc. No. 295)**

By this motion, GPS moves the Court, pursuant to Federal Rules of Civil Procedure 26 and 37, to strike or disregard the August 3, 2026, Supplemental Rebuttal Report of Jonathan I. Arnold (Doc. No. 296-7), Elsevier Inc.'s Third Supplemental Rule 26 Initial Disclosures, and Elsevier's Fourth Supplemental Rule 26 Initial Disclosures. The Court has considered each of these requests

based on the factors described in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 596 (4th Cir. 2003), and concludes as follows:

**a. Disclosures Related to Dr. Gall and Dr. Stephens**

GPS asks the Court to strike Elsevier's disclosure of Dr. Elliot Gall, an author of the allegedly defamatory Building and Environment studies (the "Studies") and Dr. Brent Stephens, one of Elsevier's experts, as potential witnesses on the truth of the Studies. Beyond the dispositive fact that GPS had itself disclosed Dr. Gall as a potential witness with relevant knowledge as an author of the Studies (which GPS directly misstated in its briefing), the disclosure by the Defendant in a defamation action that the author of the challenged writing may testify to the truth or falsity of the writing seems, to put it mildly, obvious and non-prejudicial to the plaintiff claiming defamation. To the extent that GPS did not fully pursue this issue with Dr. Gall at his deposition, the Court will not rescue it from that choice now.

Similarly, GPS has had (and appears to have taken) a full opportunity to depose Dr. Stephens over two days on the details related to the truth or falsity of the Studies, which, again, cannot fairly be described as a surprising issue in this defamation action. Therefore, the Court denies the motion to strike Elsevier's disclosures related to Dr. Gall and Dr. Stephens.

**b. Disclosure of Falfurrias Capital Partners as Potential Witnesses**

The Court agrees with GPS that the belated disclosure of three Falfurrias Capital partners—Ed McMahan, Marc Oken, and Wilson Sullivan—as potential substantive[2] witnesses should be

[2] Elsevier argues that it should be allowed to rely on the Falfurrias witnesses to give procedural testimony to authenticate and admit into evidence documents they produced. This will not be necessary. The Court expects the Parties to agree and stipulate to the authenticity and admissibility of business records produced by both sides, absent truly exceptional circumstances (which do not include the contentiousness and gamesmanship on all sides that has poisoned and expanded this case since its inception).

stricken. The identity of GPS' Board members and the connection between Falfurrias and GPS was not or certainly need not have been a secret to Elsevier. GPS named Ken Walker as a Falfurrias employee with information on its supplemental disclosures in October 2025. To the extent Elsevier wanted to know the identity of GPS' board members it could have asked directly much earlier in the case.[3] Also, having convinced the Court to exclude witnesses disclosed by GPS months ago as untimely, the Court will not permit Elsevier to identify witnesses even later. *See* Doc. No. 245.

Finally on this issue, the fact that GPS has access to these witnesses as members of its Board does not justify Elsevier's belated disclosure that Elsevier intends to seek their testimony. A party is not relieved from the obligation to timely disclose its intent to use an employee or Board member of an opposing party as a witness simply based on the witness' relationship to the other party. If the rule were otherwise, every party would either have to guess at who the other side might want to use as a witness or prepare for everyone to be disclosed or subpoenaed at the last minute. The Court will not endorse such a wasteful, unfair and unsupported interpretation of Rule 26. Here, there was no reason for GPS to have known that all its Board members might be witnesses in this action, and the Court will not permit Elsevier to identify them on the final day of discovery. Accordingly, the motion is granted as to the disclosure of the Falfurrias Capital witnesses Ed McMahan, Marc Oken, and Wilson Sullivan.

**c. Supplemental Rebuttal Report of Jonathan I. Arnold**

---

[3] Elsevier states that it wants the Falfurrias witnesses to testify with respect to the "unclean hands/*in pari delecto*" defense, which it did not plead until July 7, 2026. Even putting aside the questionable relevance of arguments related to GPS' "corporate governance and financing" in this defamation/Lanham Act action (the Court is unlikely to permit additional "mini-trials" of alleged unrelated bad acts by either Party), Elsevier should have, but did not, promptly identify these supposedly necessary additional witnesses until the final day of discovery. That was too late.

GPS' last request in this motion is that the Court strike the Supplemental Rebuttal Report of Elsevier's damages expert Jonathan Arnold. The Court has reviewed Dr. Arnold's short supplemental report, Doc. No. 296-7, and finds that GPS will not be unduly prejudiced if it is considered, as it relies on data used by GPS' expert and does not introduce any truly new damages issue into the case. Therefore, GPS' motion to strike Dr. Arnold's Supplemental Rebuttal Report is denied. However, because the report was served after Dr. Arnold's deposition, GPS is permitted to depose Dr. Arnold only on the substance of the supplemental report for up to one hour.

**6. <u>Motion to Show Cause</u> (Doc. No. 338)**

GPS' Motion to Show Cause, Doc. No. 338, is a continuation of the discovery disputes that the Court thought it had resolved on August 17, 2026. *See* Doc. No. 287. GPS argues that Elsevier has not fully complied with the Court's Order and delayed producing documents, additional interrogatory responses, etc. until shortly before or after Summary Judgment motions were due. It seeks additional sanctions against Elsevier. Elsevier claims that it has complied with the Court's order, it has been very busy finishing its own tasks and that it didn't know that GPS wanted the information before Summary Judgment motions were due, otherwise it would have "prioritized" its work differently.

While this should not need to be said to experienced counsel, a party must "prioritize" its compliance with the Court's Orders. And this should not have been a problem for Elsevier in light of the size and scope of its legal armada. Still, and even though the Court more than lightly suspects the delay in compliance until after Summary Judgment motions were due was not coincidental, the timing of the supplemental discovery will not prejudice GPS because it will have the opportunity to use the information in its Summary Judgment Response/Reply.

Therefore, the Court's primary concern with this motion is Elsevier's alleged failure to produce "in good faith a reasonable sampling of responsive documents (i.e., examples of such advertising) not to exceed 100 pages" showing Elsevier's advertising of "peer review." *See* Doc. No. 287 at 5. The Court directs Elsevier to supplement its production in compliance with this obligation on or before Noon on October 5, 2026, with an electronic copy to the Court. To the extent the Court finds the production not to be in good faith, it will revisit its ruling on whether to require Elsevier to produce ***all*** documents responsive to GPS' request for "peer review" advertising and consider the imposition of additional sanctions.

The Court will thus defer its final ruling on this motion until after this supplemental production is completed.

**ORDER**

**NOW THEREFORE IT IS ORDERED THAT:**

The Parties' Motions are **GRANTED in part** and **DENIED in part** as described above.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 1, 2026

Kenneth D. Bell
United States District Judge